(42 South. 475.)

No. 16.025.

PAYNE v. GEORGETOWN LUMBER CO.,
Limited.

(Dec. 10, 1906.)

1. ABATEMENT AND REVIVAL — ACTION FOR
PERSONAL INJURIES—DEATH OF PLAINTIFF.

Where a plaintiff brought suit for damages
for personal injuries, and died unmarried and
without issue prior to judgment, leaving a
mother and brothers and sisters, the right of
action survives in favor of the mother alone
under the provisions of article 2315 of the
Civil Code.

2. MASTER AND SERVANT—FELLOW SERVANTS.

Employés in a sawmill who are not co-
associated in the same work are not fellow
servants. Merritt v. Victoria Lumber Co., 111
La. 159, 35 South. 497, reaffirmed.

[Ed. Note.—For cases in point, see Cent. Dig.
vol. 34, Master and Servant, § 475.]

3. SAME—NEGLIGENCE OF SERVANTS—LIABIL-
ITY OF MASTER.

The master, except in case of fellow serv-
ants, is answerable for the damage occasioned
by his servants and overseers in the exercise
of the functions in which they are employed.
Civ. Code, art. 2320.

[Ed. Note.—For cases in point, see Cent. Dig.
vol. 34, Master and Servant, §§ 475–479.]

4. SAME.

Where the negligent act of a servant caused
injury, it is no defense that the particular in-
jurious consequence was unforeseen, improbable,
or not to be reasonably expected, if it was the
natural sequence of the act itself.

5. SAME—FELLOW SERVANT.

Even in case of fellow servants, the master
is liable when his own negligence contributed
to the injury, as where an employé in a sawmill
carelessly pitched a shovel, which, rebounding,
struck and released an unsafe wooden latch
holding the lever which controlled the operation
of the carriage.

[Ed. Note.—For cases in point, see Cent. Dig.
vol. 34, Master and Servant, §§ 515, 518, 519,
527, 528.]

6. DAMAGES—PERSONAL INJURIES.

In a suit for personal injuries where the
plaintiff has died from other causes, his mother,
substituted as plaintiff, is entitled to recover
damages for his pain, suffering, and disfigure-
ment, and his pecuniary loss from disability up
to the time of his death.

(Syllabus by the Court.)

Appeal from Thirteenth Judicial District
Court, Parish of Grant; Wilbur Fisk Black-
man, Judge.

Action by Bennie E. Payne against the
Georgetown Lumber Company, Limited.
Plaintiff died, and his mother and brothers
and sisters were made parties plaintiff.
Judgment for defendant, and plaintiffs ap-
peal. Reversed, and judgment rendered for
the mother.

W. C. & J. B. Roberts, for appellants. Hud-
son, Potts & Bernstein, for appellee.

LAND, J. Plaintiff on June 14, 1904, while
in the employ of the defendant company, met
with an accident, suffering thereby the loss
of his left leg, and other injuries. He filed
this suit on September 24, 1904, for $15,000
damages, on the ground that said injuries
were occasioned by the negligence of the de-
fendant company. On August 21, 1905, the
plaintiff died, before trial of the suit, from
some other cause than the injuries sustained.
After his death his mother and brothers and
sisters were made parties plaintiff on their
own petition. The mother averred that she
inherited the whole right of action under
article 2315 of the Civil Code, as amended by
Act 71, p. 94, of 1884, and, in the alternative,
that she inherited one-fourth if the brothers
and sisters were held to have inherited three-
fourths. The brothers and sisters averred
that they were entitled to three-fourths of
whatever damages might be recovered.

Defendant excepted to the petition of the
mother and brothers and sisters on the
ground that the action had abated by the
death of the original plaintiff. This excep-
tion was overruled.

Before stating the case further, we will
proceed to consider and pass upon the merits
of this exception. Article 2315 of the Civil
Code, as amended, reads as follows:

"Every act whatever of man that causes dam-
ages to another obliges him by whose fault it
happened to repair it. The right of this action
shall survive in case of death in favor of the
minor children or widow of the deceased or ei-
ther of them, and in default of these, in favor
of the surviving father or mother or either of

them for the space of one year from the death.

"The survivors above mentioned may also recover the damages sustained by them by the death of the parent or child or husband or wife as the case may be."

It is too plain for argument that brothers and sisters and other collaterals are not included among the beneficiaries named in said article. As actions for damages for personal injuries are strictly personal and nonheritable under the general law, such relatives can take nothing as the legal heirs of the deceased. The circumstance that the action was pending does not change the situation. Chivers v. Rogers, 50 La. Ann. 57, 23 South. 100. Had a judgment been rendered in favor of the original plaintiff, the consequences might have been different. Vincent v. Sharp, 9 La. Ann. 463.

Defendant's counsel also contest the right of the mother to prosecute this suit, on the ground that the plaintiff died, not from the personal injuries sustained, but from other causes, after exercising his own right of personal action.

Article 2315 originally read as follows:

"Every act whatever of man which causes damage to another obliges him by whose fault it happened to repair it."

In 1855 the article was amended by adding:

"The right of this action shall survive in case of death in favor of the minor children and widow of the deceased or either of them, and in default of these in favor of the surviving father and mother or either of them for the space of one year from the death."

In McCubbin, Tutor, v. Hastings, 27 La. Ann. 716, the court said:

"The action, in so far as the minor is concerned, is the right of action which his mother has against the defendant for the suffering which was caused her by the defendant's employé and which he inherited. He has no claim against him for his mother's death."

In Vredenberg v. Behan, 33 La. Ann. 643, the court said:

"The act of 1855, amending article 2315, Civ. Code, expressly limits such right in favor of the widows and minor heirs to the right of action which the deceased would have had, had he survived the injury, and it cannot be extended beyond this."

In Walton v. Booth. 34 La. Ann. 914, the court, through Bermudez, C. J., said:

"The right of action which plaintiff's daughter would have been entitled to exercise, if she had not died, did not survive in favor of the husband, but in favor of her father and mother."

In that case the point was made that the daughter did not die from the effects of the negligently administered sulphate of zinc, but of erysipelas; and the court said:

"But it is no less true that, by reason of the taking of the dose of sulphate of zinc, she endured lasting and great pain and suffering, belching, and vomiting, for which she would have been entitled to damages had she recovered."

In Van Amburg v. Railroad Co., 37 La. Ann. 650, 55 Am. Rep. 517, the mother recovered damages for the sufferings of her son who was killed in a railroad accident, but damages occasioned by his death were denied.

The above authorities show that under the amendment of 1855 the beneficiaries named therein inherit all the rights of action of the party injured, and are not vested with an independent right of action. The article as amended embraces in its terms all cases of actionable injury, and cannot be restricted to mortal injuries without doing violence to the text. If a person is injured by the fault of another, a right of action arises at once in his favor, and, in case of his death, survives in favor of the particular beneficiaries named in the first paragraph of the article. In other words, all rights of action arising from torts are made heritable quoad the minor children or widow or father and mother of the deceased. The intention of the lawmaker was to make some provision for the beneficiaries enumerated in case of the death of the husband, father, or son, and to accomplish that purpose made causes or rights

of action for torts heritable in their favor. Whether the de cujus died from the particular injuries or from other causes, the consequence is the same as far as the statutory beneficiaries are concerned. It is unreasonable, as well as illogical, to suppose that the lawmaker intended that a claim for damages should pass or not pass to the widow or minor children according to the particular cause of death of the husband or father. In Walton v. Booth, supra, the court found no difficulty in concluding that the father and mother could recover, although the daughter had not died from her injuries, but from other causes. In Chivers v. Rogers, 50 La. Ann. 65, 23 South. 100, the court held that under article 2315 of the Civil Code the right of action of the father expired on his death, but said that this doctrine "does not extend to a case in which a person has sustained personal injuries and subsequently dies from some other cause."

The argument that the right of action abated because the decedent brought suit to enforce it in his lifetime is without merit. An action cannot expire or abate when the law declares that it shall survive in favor of certain persons. The amendment of 1855 was supplemented in 1884 by another amendment giving the same relations of the deceased an independent right of action to recover the damages sustained by his death.

Our conclusion is that the exception should have been overruled as to the mother and sustained as to the brothers and sisters.

## On the Merits.

On June 14, 1904, Benjamin E. Payne was employed at defendant's mill. His chief duty was setting blocks on the carriage, and he also assisted in changing the saws. He worked under the direction of the sawyer. He was engaged in the work of assisting to change the saws on the evening of June 14, 1904, when he was seriously injured by being struck by the carriage and jammed against the bumpers at the end of the track. The carriage was released in consequence of the latch which controls the lever being knocked loose by the impact of a scoop shovel thrown by W. W. Ward, a night watchman, who was at the time engaged in cleaning the floor of the mill of the sawdust and trash accumulated during the day's work.

Plaintiff in his original petition charged that the defendant was guilty of negligence in the following respects:

(1) That the wooden latch used to hold the lever of the carriage in place was insufficient and unsafe for that purpose to the knowledge of defendant company, and that plaintiff, a minor at the time, was not warned or informed of the insufficiency and danger of such a fastening.

(2) In not turning off the steam which operated the carriage when the whistle blew to close down.

(3) In its employé's negligently and carelessly throwing the shovel in such manner that it struck and jarred loose the latch that controlled the lever of the carriage.

The answer of the defendant was a general denial, coupled with a special denial that the accident was due to any defects in the machinery, and that the wooden latch was insufficient, insecure, or unsafe. The answer further averred that the accident was not caused by the carelessness of any of the employés, and, if so caused, it was the fault of a fellow servant.

The district judge filed a written opinion in which he reviewed the evidence, and arrived at the following conclusions:

(1) That the decided preponderance of the evidence, 15 witnesses against 8, showed that the latch in use at the time of the accident was as safe as any other latch, and that there was no safe lock used for such purpose.

(2) That the watchman had to use the

PAYNE v. GEORGETOWN LUMBER CO.

steam to move the carriage in order to clean up the mill, and it had been usual for him to do so. That there was no danger in leaving the steam on, if the lever had remained securely locked.

(3) That the watchman was not careless in throwing the shovel as he did, as no prudent man in his place could have anticipated the consequences which ensued.

Plaintiff was at work assisting in changing the saws when he heard the escape of steam, and at the same time was struck by the carriage. He was cut by the saw and his leg mashed on the bumpers. He was carried in an unconscious state to the hospital at Alexandria, where his leg was amputated.

Ward was cleaning up the mill, and pitched his shovel over the saw, intending it to fall in the carriage track behind the plaintiff and his assistants, who were changing the saws; but it struck the corner of the log deck, and, rebounding, turned over and struck the latch of the lever, and the lever fell forward, releasing the carriage and at the same time turning on the steam. The shovel was pitched but a short distance, and in the rebound struck the latch with sufficient force to release the lever from the notch, two inches in depth, which held it in a perpendicular position. Ward testified that the force thus exerted was "not much." If the shovel had landed in the place intended, no injurious results would have followed. Therefore the careless or unskillful pitching of the implement was the primary cause of the accident. There was no necessity for pitching the shovel over the saw, as it could have been readily carried by the watchman to the other side. This is no case of "casus," as the injurious consequence naturally followed from the striking of the shovel on the corner of the log deck, caused by the unskillful or careless pitching of the implement. That the particular injurious consequence was "improbable" or "not to be reasonably expected" is no defense. Wharton, Law of Negligence (2d Ed.) § 77. The same writer says:

"The fact is, that the consequences of negligence are almost invariably surprises. A man may be negligent in a particular matter a thousand times without mischief; yet, though the chance of mischief is only one in a thousand, we would continue to hold that the mischief, when it occurs, is imputable to the negligence." Id.

What the watchman did was to pitch the shovel aginst an obstacle which caused it to rebound in the direction of the lever, and the impact was the natural consequence. Article 2316 of the Civil Code reads as follows:

"Every person is responsible for the damage he occasions not merely by his act, but by his negligence, imprudence, or his want of skill."

The next question is whether the watchman was the fellow servant of the plaintiff. They were working in the same mill, at the same time, but were not engaged in the same kind of work. The one was cleaning up the mill and in doing so had to move the carriage, while the other was changing the saws under the direction of the sawyer. Plaintiff's counsel cites Merritt v. Victoria Lumber Co., 111 La. 159, 35 South. 497. The case is directly in point, as Merritt was a general laborer and offbearer about the mill, and was not co-associated in work with the men operating the ripsaw. In the case at bar there was no co-association between the plaintiff and the watchman; their duties being entirely distinct.

Article 2320 of the Civil Code declares that "masters and employers are answerable for the damages occasioned by their servants and overseers, in the exercise of the functions in which they are employed." By jurisprudence it has been established that this doctrine does not apply to fellow servants, but, with this exception, the plain letter of the law holds the master answerable for the acts of his servants. The case before us does not fall within the exception, and logically our opin-

ion should end here on the question of liability.

The voluminous record is made up principally of opinion testimony. Whether the watchman was guilty of negligence and whether the latch was reasonably safe were questions propounded to and answered by the witnesses. The majority opinion evidence shows that the watchman was negligent, and that the latch was reasonably safe. The first question was exclusively for the judge to determine. The second should have been propounded only to experts, and their opinions weighed by the reasons given and the facts of the case. It is patent that the wooden latch used was in the nature of a makeshift. While it sufficed to hold the lever in place, it was liable to be unloosened by a slight pressure applied to the edge next to the lever. The watchman and foreman testified that on the occasion in question the force of the fall of the shovel was slight. Moreover, some 18 inches or more of the latch was exposed to impact from persons passing or moving objects. The day after the accident the latch was replaced by an iron pin lock, in which the end of the pin was the only part exposed to outside contact. The iron toe lock for which the wooden latch was substituted was raised only a few inches from the floor. In not using the standard locks and resorting to the exposed wooden latch, the defendant greatly increased the danger of accidents, and in all probability the accident would not have happened had any other kind of lock been used. The danger of the carriage running away is always imminent in a sawmill while the steam is on, and a proper regard for safety of life and limb demands the use of the most approved appliances made for the purpose of locking the lever. Basing our judgment on the facts, and not on the opinion of witnesses, we conclude that the defendant was negligent in not furnishing a safer lock.

Plaintiff was injured on June 14, 1904, and died from other causes on August 21, 1905. Damages for the loss of a limb are usually calculated on the basis of the tables of mortality, showing the expectation of life of a person of the same age as the party injured. In the case at bar such a calculation cannot extend beyond the date of the ascertained death of the plaintiff. Hence, the substituted plaintiff is entitled to recover damages for the pain, suffering, and disfigurement of the deceased, and for disability resulting from the loss of his leg during the remainder of his life. The pain and suffering were intense and during the brief remainder of his life he was reduced to the condition of a cripple. His usefulness as a manual laborer was greatly impaired. In such cases there is no standard for the measurement of damages for pain, suffering, and disfigurement. In the case at bar the direct pecuniary loss resulting from the injury was not great owing to the early death of the plaintiff. Under the circumstances we consider an allowance of $2,000 as damages to be conservative.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and it is now ordered that the substituted plaintiff, Mrs. Martha S. Payne, do have and recover of the Georgetown Lumber Company, Limited, the sum of $2,000, with legal interest from the date of this decree, with all costs of suit in both courts.