(83 South. 19)

No. 23247.

THOMPSON v. NEW ORLEANS RY. & LIGHT CO.

(June 30, 1919.  Rehearing Denied Oct. 14, 1919.)

*(Syllabus by Editorial Staff.)*

1. ABATEMENT AND REVIVAL ⬦⟿54 — ACTION BY UNMARRIED MAN FOR PERSONAL INJURIES ON DEATH SURVIVED BY MOTHER.

Where a young unmarried man sustained personal injuries April 12, 1915, and after institution of suit died December 4, 1916, *held*, that the cause of action survived to his widowed mother, under Civ. Code, art. 2315 [2294], as amended by Act No. 223 of 1855, and Act No. 120 of 1908; for, as the cause of action survived or continued by virtue of statute, recovery by the widowed mother cannot be defeated on the ground that to allow her to prosecute the suit after the lapse of one year from the infliction of damage would be to change the law of descent and distribution.

2. ABATEMENT AND REVIVAL ⬦⟿54—ACTION FOR PERSONAL INJURIES SURVIVES FOR ONE YEAR AFTER DEATH.

Under Civ. Code, art. 2315 [2294], as amended by Act No. 223 of 1855, and Act No. 120 of 1908, a cause of action for personal injuries survives for one year after the death of the party injured, even though his death did not occur until more than a year after infliction of the injuries.

3. CARRIERS ⬦⟿318(4) — EVIDENCE SHOWING INJURIES TO ALIGHTING PASSENGER THROUGH NEGLIGENCE.

In an action for personal injury sustained by a passenger on a street car, evidence *held* to show that the injuries were caused by the jerking of the car, which threw the passenger from his feet on the small of his back while he was standing on the rear platform waiting to alight.

4. DAMAGES ⬦⟿185(3) — EVIDENCE SHOWING DEATH CAUSED BY INJURIES ON TRAIN.

In an action for personal injuries to a passenger, which were claimed to have resulted from a blow which he received in falling on one of the defendant's cars, due to a sudden jerk or lurch, evidence *held* to warrant a finding that the injuries, which culminated in death, were not the result of tuberculosis, but the result of a malignant tumor caused by the fall.

Monroe, C. J., and Provosty, J., dissenting.

Appeal from Civil District Court, Parish of Orleans; Fred D. King, Judge.

Action by L. Lamar Thompson against the New Orleans Railway & Light Company. Plaintiff died before trial, and his mother, Mrs. Anna B. Thompson, a widow, was substituted as party plaintiff. From a judgment for plaintiff, defendant appeals. Affirmed.

Dart, Kernan & Dart, of New Orleans, for appellant.

Joseph Harris Brewer and John Ward, both of New Orleans, for appellee.

SOMMERVILLE, J. This personal injury suit for damages was brought by plaintiff, who was a young man, aged 22 years, and

who was in full possession of all of his faculties, and was regularly employed by the United States Public Health service as a stenographer-typist, at a salary of $75 per month. He was unmarried. He was steady and earnest, of good standing and character in the community in which he lived; was moral, religious, patriotic; and he supported himself. His future was promising and bright, and his health was apparently good prior to April, 1915.

On the morning of April 12, 1915, he was a passenger on one of defendant's cars, and was on his way to his office. As he neared the corner at which he was to have alighted, he signaled the conductor to stop the car, and he arose from his seat and went to the rear platform. On reaching the platform, he alleges and proves that the car gave a sudden and severe jolt which threw him from his feet, and he fell on the small of his back resting on the edge of the platform, with his feet dragging on the ground for some distance before the car was stopped. He further alleges that he was severely injured, that he suffered great pain, that his earning capacity was destroyed, and that he had been rendered a physical wreck.

Plaintiff instituted this suit April 7, 1916, and after answer had been filed, and his testimony had been taken under commission, he died December 4, 1916. His mother, Mrs. Anna B. Thompson, then a widow, was substituted as party plaintiff. This substitution of Mrs. Thompson was made more than one year after the accident to her son.

Thereupon, the defendant filed exceptions to the effect that the claim asserted by the plaintiff, Thompson, had never been reduced to judgment and had abated at his death; that no notice had ever been served upon defendant by those claiming as heirs of said Thompson; that actions for injuries sustained are not heritable; and that Mrs. Thompson, who sought to have herself made party plaintiff, had no right or cause of action to further prosecute this suit. The exception and plea in abatement were properly overruled.

[1] Mrs. Thompson, the substituted plaintiff, is not substituted as the heir of her son Lamar. She is here pursuing her own right of action given to her under article 2294, now art. 2315, C. C., which was amended in the year 1855 (Act No. 223, p. 270) which act extended the right of action of the injured person to the mother of the injured party, in the event of the death of the latter. That article of the Code, as finally amended by Act No. 120, 1908, p. 178, reads as follows:

"Article 2315. Every act whatever of man that causes damage to another, obliges him by whose fault it happened to repair it; the right of this action shall survive in case of death in favor of the children or widow of the deceased or either of them, and in default of these in favor of the surviving father and mother or either of them, and in default of any of the above persons, then in favor of the surviving brothers and sisters or either of them, for the space of one year from the death; provided, that should the deceased leave a widow together with minor children, the right of action shall accrue to both the widow and minor children; provided further, that the right of action shall accrue to the major children only in those cases where there [are] no surviving widow or minor child or children.

"The survivors above mentioned may also recover the damages sustained by them by the death of the parent or child or husband or wife or brothers or sisters as the [case] may be."

The article, as amended in 1855, gave the "right of action" for damages ex delicto to the mother of the deceased party injured. It says:

"The right of this action shall survive in case of death in favor of * * * the surviving father and mother or either of them, for the space of one year from the death. * * * The right of this action shall survive."

That is, it shall "live." To survive is:

"To continue to live or exist beyond the life, or existence of; to continue to live or exist beyond (a specified period or event); to live

through in spite of; live on after passing through; to remain alive; exist in force or operation beyond any period specified." Webster.

The action brought by Mr. Thompson therefore continued to live, to exist in force or operation after his death, in favor of his mother. Defendant argues that to permit the action of Mrs. Thompson to be prosecuted by her after the lapse of one year from the infliction of the damage to her son would be to change the law of descent and distribution of estates. There was no attempt to change the law of descent or distribution of estates in amending article 2315 in the year 1855. The rights of action of injured parties were continued in favor of the mother and others, and this right of action for personal injuries did not therefore die with him who had suffered those injuries. And at the time that the article was first amended, in 1855, there was no limitation on the Legislature forbidding the changing of the law of descent and distribution of estates. That limitation is contained in the Constitutions of 1878 and 1898. But we have said that there was no attempted change in the law of descent and distribution of estates. The surviving right of action in favor of minor children and widow, or parents, or others named, is a statutory right.

[2] Defendant next argues that the right to claim damages was personal to the original plaintiff, and was only reserved to those of his kin named for the space of one year should he die before exercising the right of action. But the law says to the contrary. It says that the right of action shall survive in cases of death in favor of the minor children, etc.; regardless of whether the injured party had exercised his right of action for damages ex delicto or not, and had died before judgment was rendered.

This phase of the question was not actually involved in the Chivers Case, 50 La. Ann. 57,

23 South. 100, although it was referred to in the opinion, in the following words:

"If, then, one of the beneficiaries first enumerated should institute a suit and cause it to be put at issue, and thereafter die, and his beneficiaries should, on that account, inherit the pending action, the result would necessarily be to confer the benefit of the statute on the persons not contemplated therein; and defeat the claim of the one who would otherwise have succeeded thereto.

"The Supreme Court has furnished the true solution of this proposition in giving an interpretation to a statute of West Virginia quite similar in terms to that of our Code of Practice, art. 21, in the following extract, viz.:

" 'The reasonable inference is that the clause relied on, like the rest of the chapter, is intended to prescribe the mode of procedure in actions, the cause of which survives, either at common law, or by virtue of other chapters of the Code; and that its whole effect is to avoid the necessity of bringing a new action when the right of action survives, and not to give a new right of action which did not exist before.' * * * Gerling, Administrator of Martin, v. Railroad Company, 151 U. S. 673 [14 Sup. Ct. 533, 38 L. Ed. 311].

"There is a line of decisions by this court upon a similar question which bears a strong analogy to the instant case; we refer to the cases in which it has been held that if the surviving widow, left in necessitous circumstances, dies without having actually received the sum of $1,000, which the law accords her, same does not pass as an inheritance to her legal heirs at her death; because, say the court, 'the right of the widow is personal and does not constitute a part of her succession.' Succession of Durkin, 30 [La.] Ann. 669; Succession of Robertson, 28 [La.] Ann. 832; Succession of Tugwell, 43 [La.] Ann. 879 [9 South. 499]; Succession of Justus, 44 [La.] Ann. 721 [11 South. 95]." Chivers v. Roger, 50 La. Ann. 57, 23 South. 100.

In the Payne Case, 117 La. 983, 42 South. 475, the exact point was presented for consideration, and was therein disposed of adversely to the position set up by the defendant here. There the mother was substituted as party plaintiff in the suit of her injured son after his death, as was done in this case, and the court said:

"The argument that the right of action abated because the deceased brought suit to en-

force it in his lifetime is without merit. An action cannot expire or abate when the law declares that it shall survive in favor of certain persons. The amendment of 1855 was supplemented in 1884 by another amendment giving the same relations of the deceased an independent right of action to recover the damages sustained by his death." Payne v. Georgetown Lumber Co., 117 La. 983, 42 South. 475.

The Payne Case was referred to approvingly in Flash v. Louisiana Western R. R. Co. 137 La. 352, 68 South. 636, L. R. A. 1916E, 112.

Mrs. Thompson has not, in this proceeding, sued to recover damages to her resulting from her son's death.

The exceptions were properly overruled.

[3] The testimony of Lamar Thompson, plaintiff, was taken at his residence, in the city of New Orleans, while he was sick in bed, under a commission issued for that purpose.

Plaintiff testified that he had boarded a Canal Belt car going towards the lake, and as he neared Rocheblave street, where he intended to leave the car, he signaled for the car to stop, and he arose, left his seat, and walked to the rear platform, where he stood holding the handle bar of the vestibule; that at the intersection of Canal and Rocheblave streets the car gave a sudden jerk, he was thrown forward, and his feet slipped from under him; he landed on the small of his back on the edge of the platform of the car; and he was dragged across the intersection of Canal and North Rocheblave into the grass of the next block, about a little over-halfway, with his feet dragging on the ground. But as soon as the car stopped he got into an upright position, dusted himself off, and went after his hat, saying to the conductor that he did not think he was hurt. This part of the plaintiff's testimony was corroborated by a friend of his, who was about to speak to him, when he saw the car give a sudden stop, or jolt, and plaintiff fall as described. Another witness, a woman living in the neighborhood, heard what she termed a noise sounding like a collision between two cars on the track, about the time of the accident. Plaintiff's hands were scratched and bruised, and his clothes were soiled, as was testified to by his office companions, on that occasion.

The accident was clearly proved, although it is not clear as to what caused the car to jolt or suddenly stop; and it was this jolting which caused injuries to the plaintiff.

[4] Plaintiff further testified that, for about two weeks, he went to his business regularly, at which time he began to have pains in the small of his back and in the region around the hips, right thigh and leg, and the abdomen; that he consulted a physician of good standing in this community, who diagnosed the case as that of sciatica. Plaintiff testified that he continued to grow worse, and to suffer greatly. Other physicians were called into consultation, and they diagnosed the case as that of sciatica; but, as time went on, the pains became greater, the suffering more intense, and plaintiff became very much emaciated. He was taken to Touro Infirmary, where he remained for some time, under the care of physicians and surgeons of recognized ability and standing in the city of New Orleans. It was discovered that a tumor had formed, but that he was so weak and emaciated that an operation could not be performed upon him. He was in "acute continuous pain, due to pressure." "There was nothing left except the bone and the skin covering it." He was eventually taken to his brother's home in Memphis, Tenn., where he died, and where an autopsy was made on his body by a physician representing the defendant company.

The autopsy is said to have revealed that the plaintiff was suffering from tuberculosis, a cancerous growth in the sacral region of the pelvis, Bright's disease, acute and chronic cystitis, acute and chronic prostatis with

abscess formation, and chronic selenitis. And it is contended by defendant that the existence of all of these diseases goes to show that the deceased plaintiff was not in good health at the time of the accident, and that the accident was not the cause of his sickness, suffering, and death.

But the physicians who attended Mr. Thompson during his lifetime in New Orleans and in Memphis were, in our opinion, better able to judge of Thompson's physical condition than were the experts who examined portions of Mr. Thompson's body which had been taken to them after his death. Some of the physicians, both of New Orleans and Memphis, saw Mr. Thompson and treated him during his lifetime and were present at the post mortem examination. Their testimony is to the effect that tuberculosis was not the cause of Mr. Thompson's death; and that the real cause of his death was a malignant tumor, or cancer, which had resulted from a trauma or blow apparently inflicted about the time of the accident to him, as before described. They say, in effect, that such a malignant tumor as Mr. Thompson had results from a blow, as a rule, and that it generally attains its full growth and does its deadly work within 12 or 18 months' time; in just about the time between the day of the accident to Mr. Thompson and the day of his death. As to the presence of the tubercular condition, Dr. King, of New Orleans, testified that he had made a careful examination of Mr. Thompson and could find no evidence of tuberculosis, after repeated tests, until about five months after the accident, and that it then made rapid progress. The physicians generally testified that a patient suffering with a malignant tumor, as was Mr. Thompson, was a very susceptible person to infectious bacilli of all descriptions; and that it is only reasonable to suppose, as did the physicians, that the tuberculosis appeared and increased after the malignant tumor had assumed a formidable development. Dr. Edward S. Hatch, a physician of New Orleans of high standing, testified, in his opinion, that Mr. Thompson died of the malignant tumor from which he had been suffering for some months before his death, although the physicians all testified that the cause or source of cancerous tumor was not known positively.

The evidence shows that Mr. Thompson was a very great sufferer; he was confined to his bed for about 19 months; he was kept much of the time under the influence of opiates; he lost his earning power, and had become a dependent upon his friends and relatives. His mother testified that the doctor's bills were in excess of $1,000. And at the time he filed this suit, Thompson had been forced to the conclusion that the span of his life had nearly run, and he had resigned himself to his fate.

Dr. Le Roy of Memphis, testified that he was present at the autopsy, and examined portions of Mr. Thompson's body microscopically, and that the tumor had been, in his opinion, the cause of his sickness, suffering, and death; that the death was due to a sarcoma in the region of the right sacre illiac joint. Dr. McMahon, of Memphis, testified that he had attended Mr. Thompson professionally, was present at the autopsy, and had made a similar examination to that of Dr. Le Roy, and he testified to the same results and conclusions. They said that the tumor was a large one in the lower section of the abdomen in the region from the hip bone to the lower portion of the back bone, and that it was connected with the bony parts and showed some large nerves passing through it; that it was larger than a fair sized grape fruit, and extended from the lower portion of the bony pelvis to a point a couple of inches below the navel.

From all this evidence we are constrained

to hold that the cause of Mr. Thompson's suffering, sickness, and death was not tuberculosis, but the existence of a malignant tumor, brought about by the blow which he received on falling on one of defendant's cars, as narrated above; and that defendant was at fault and is responsible in damages therefor.

The verdict of the jury will not be disturbed.

The judgment appealed from is affirmed.

MONROE, C. J., and PROVOSTY, J., dissent.