THOMPSON et al. v. TRAVELERS INS. CO. et al.

No. 5680.

Court of Appeal of Louisiana. Second Circuit.

April 29, 1938.

Rehearing Denied June 1, 1938.

E. W. & P. N. Browne, of Shreveport, for appellants.

Lee & Lee and Harry V. Booth, all of Shreveport, for appellee.

HAMITER, Judge.

An automobile collision occurred on November 2, 1935, in the Agurs section of the City of Shreveport, Louisiana, at the intersection of the municipal airport road and Louisiana Highway No. 8. The vehicles involved were a Ford sedan driven by Thomas Leonard Thompson, whom we shall hereinafter sometimes refer to as plaintiff Thompson, and a Chevrolet sedan operated by one A. G. Aiken. Other persons occupying the Ford car at the time of the accident were the driver's wife, Mrs. Louise Catherine Thompson, and two guests, viz; Mrs. Earl L. Smith and Miss Meva Andrews.

Thereafter, suits were filed by said guests, in which they sought damages for injuries alleged to have been sustained by them, against E. W. Lauhon, the owner of the Chevrolet and an automobile salesman who was demonstrating that car to Aiken, the Howard Crumley & Company, the salesman's employer, and the Travelers Insurance Company, the insurer of said employer. Judgments were recovered by the claimants. Smith v. Howard Crumley & Co., La. App., 171 So. 188.

On September 28, 1936, plaintiff Thompson and his wife instituted this suit against said A. G. Aiken, E. W. Lauhon, Howard Crumley & Company, Inc., and the Travelers Insurance Company, alleging that both were injured in the aforementioned acci-dent which was occasioned solely by the gross negligence of Aiken and Lauhon. They ask a solidary judgment against defendants for the damages assertedly sustained. With reference to the husband's claimed injuries, the petition recites:

"Your petitioner, Thomas Leonard Thompson, shows that as a result of said collision, he received injuries and shock which have permanently disabled him.

"In the above regard, your petitioner avers that prior to said collision and accident, he was suffering from a heart condition which prevented him doing work, but that your petitioner was able to make trips in an automobile and to be up and about his home; to go back and forth from town; but that since said accident, and in particular, since March, 1936, your petitioner has been strictly confined to his home and bed, and he avers that said accident and shock resulting therefrom have aggravated said heart condition to the extent that he will be an invalid the balance of his life time."

"That the aggravation of said heart condition was due to said shock and excitement and trauma of said accident."

Defendants deny negligence on their part and specially plead that plaintiff Thompson was negligent and that his negligence was one of the proximate causes of the collision. Defendants also aver that he had the last clear chance to avoid the collision and failed to do so. They also deny that plaintiffs were injured in the collision as alleged.

Trial of the case was completed on March 30, 1937. On April 13, 1937, and before a decision was rendered, plaintiff Thompson departed this life.

A stipulation signed by the attorneys for all of the parties in the controversy was filed on October 19, 1937. This provides:

"Thomas Leonard Thompson, one of the plaintiffs herein, having died since the institution of this suit, his death having occurred on the 13th day of April, 1937, and his widow, Mrs. Louise Catherine Thompson having filed a supplemental and amended petition, claiming additional damages averred by her to have been sustained by reason of his death, the parties hereto, in order to avoid the necessity of another trial, have agreed and stipulated, as follows:

"1. That the said Thomas Leonard Thompson was born on January 9th, 1880, in the Town of Jefferson, State of Texas.

"2. That after and since the date this suit was filed, the myocarditic heart disease, from which the said Thompson was suffering, continued to exist in practically the same degree, the said Thompson finally growing worse until the date of his death, as aforesaid, resulting from said heart disease; that in addition to the medical testimony previously taken herein, Dr. J. M. Gorton, in the event of another trial, and if sworn as a witness, would testify that the said Thompson visited his office on February 29th, 1936, at which time his condition appeared somewhat better than it had on February 22nd, of that year; and that from the date of the trial of the case, the said Thompson's condition grew worse until the date of his death.

"3. That said Thompson was married but once, and then to the said Louise Catherine Thompson, on the 2nd day of January, 1906, in the Town of Jefferson, Texas.

"4. That there was no issue of said marriage, and the said Thompson left no surviving descendants or ascendants.

"5. That the printed American Experience Table of Mortality attached to the supplemental petition herein, is the general mortality table in use by the leading life insurance companies.

"6. That the said Louise Catherine Thompson and Thomas Leonard Thompson loved each other, and were living together as man and wife at the time of his death.

"7. That nothing herein shall be construed as an admission on the part of defendants that plaintiff, Mrs. Louise Catherine Thompson, has a separate right of action by reason of the death of her said husband, and that all legal defenses of said defendants are wholly unaffected by this stipulation, including the exception of no cause and no right of action, and all pleas of prescription, and that the facts admitted herein may be considered in connection with any exceptions, in support of which evidence might be legally received."

Simultaneously with the submission of the stipulation, the widow tendered a supplemental petition in which she avers the quoted agreed facts and adopts all of the allegations of the original petition. Also, therein she alleges that she has acquired all of the rights and causes of action which her husband had against defendants, and that she is entitled to and should be substituted as plaintiff for him and in his stead, with full right to prosecute the suit for damages sustained by decedent as the result of the accident, all being in addition to her right to recover damages for the personal injuries sustained by her. She further alleges that her husband's death resulted from the accident and defendants' negligence, and that she is entitled to damages, by reason of that death, for mental anguish and suffering endured by her, and for the loss of her husband's companionship, love and affection.

To the supplemental petition, defendants filed a plea of one year prescription and exceptions of no cause and no right of action.

These were not expressly adjudicated on, but were impliedly overruled by the final judgment rendered. Apparently, they have since been abandoned, for they are not urged here.

Defendants then answered the supplemental petition denying generally all of the allegations therein contained, except such as were admitted in the signed stipulation. Further answering, they aver that plaintiff in no event has any greater rights than those of her husband, or any cause of action against them in addition to the damages claimed by him, and that he has proved no actual damages. They further allege that under the laws of Louisiana, "only one right of action is granted, and the assertion by the original plaintiff, T. L. Thompson, of the right of action claimed by him, as a matter of law, exhausted such right of action, leaving no further rights which could legally be asserted by his survivor."

The case was thereafter argued and submitted for adjudication. Mrs. Thompson recovered judgment against said defendants, in solido, in the sum of $3,500, "for the injuries, suffering and death of her husband", and in the further sum of $500 for personal injuries sustained by her, all with legal interest and costs.

Defendants appealed, and in this court Mrs. Thompson has answered praying that:

"* * * the judgment of the trial court be amended by increasing the amount in favor of your appearer as substituted plaintiff for her late husband, Thomas Leonard Thompson, to the sum of $5,000.00 and by increasing the amount in her favor, as plaintiff, in the additional sum of $5,000.00; or in the alternative, that the judgment of the trial court be increased in favor of your mover, both as substituted plaintiff and as plaintiff, in the full sum of $10,000.00, and as thus amended, that the said judgment be affirmed."

The record in the Smith and Andrews Cases, mentioned supra, and involving the accident in question, was introduced and filed in evidence in this cause. A restudy of that record, together with a consideration of the testimony in the instant controversy, convinces us that the collision occurred solely because of the negligence of A. G. Aiken, who was driving the Chevrolet sedan. As plaintiff Thompson's car was traveling in a northerly direction, at a reasonable rate of speed and on the right hand side of Louisiana Highway No. 8, which is a right of way thoroughfare and one of the main arteries of traffic leading from the business district of Shreveport to points north and northwest, Aiken drove his machine south off the municipal airport road into this favored highway and against the Ford car. Louisiana Highway No. 8 enjoys a curve at or about the intersection and place of the collision. A few feet therefrom but on and across the airport road was a stop sign painted in large letters for the benefit and observance of persons traveling south on that road. This warning was not heeded by Aiken, and his Chevrolet crashed into the right rear fender and wheel of the Ford as the latter was in the act of negotiating the mentioned curve.

In the opinion in the Smith and Andrews cases we gave our views on the responsibility for the accident, and they remain unchanged, as follows (page 191):

"A study of the testimony bearing upon the issue of negligence leaves no doubt in our minds that Aiken's negligence only caused the collision. The Thompson car had the right of way and had the legal right to assume that traffic entering Highway No. 8 from the airport road would recognize this superior right and stop, as required by law and the sign across the road near the intersection, before attempting to cross it. Aiken utterly failed to do this, but, on the contrary, drove heedlessly and rapidly into the intersection and into the Thompson car, without there being a chance for it to alter its course so as to avert the collision."

Thompson had his car under control and did everything possible to avoid the collision after he became aware of Aiken's failure to stop at the intersection, but his efforts were unavailing. Under the circumstances, we cannot say that the last clear chance for averting the collision was with him.

The next and most serious question presented by the record is: Does the proof disclose that plaintiff Thompson was injured by reason of the collision?

In the month of March, 1931, while living in El Dorado, Arkansas, Thompson experienced severe trouble with his heart. This condition was termed myocarditis, or a disease of the muscle fibres of the mentioned organ. He was in a sanitarium because of this attack for about three weeks. Several months thereafter he moved to Shreveport. In November of 1931, he resumed his work for his employer, which was that of a blacksmith helper, and continued it until the early part of March of

1932, when his heart again became troublesome. At this time he was confined to his bed at his home for four or five weeks, suffering from a myocarditic condition and mild decompensation. At the termination of the confinement, he commenced visiting the office of his physician for examinations and treatments, and on the latter's advice, no further work was attempted by him. These visits occurred about once or twice a month, and continued until December, 1932, at which time he moved to Vivian, Louisiana. Thereafter, his heart condition was in a state of arrestation, and for a period of approximately three years he was able to drive his automobile on trips to neighboring towns, attend picnics, fishing parties, picture shows and other places of amusement, enjoy walks to various parts of Vivian as he desired, and to perform the usual activities of life which did not necessitate strenuous effort or exercise. He suffered no severe attacks during such period. Occasionally, however, a local physician was called to his home, usually at night, to attend him while undergoing labored breathing or dyspnea, which resulted from the condition of his heart. These slight spells, which the neighbors termed asthma, did not confine him to bed, and in each instance he was able to go about his ordinary affairs on the following morning.

Mr. Thompson visited the office of his physician in Shreveport on the morning of November 2, 1935, and after an examination, received a favorable report on his condition. To use the words of the medical practitioner: "I told him that he was better than I had seen him in some time". The collision occurred on that same day while plaintiff was traveling to his home in Vivian after the medical examination. No portion or member of his body was thrown against any part of the vehicle at the time of or after the impact, but the car in which he, his wife and guests were riding was pushed off the pavement, a distance of approximately sixteen feet from the point of contact.

On November 3, 1935, or the day after the accident, he began to be very nervous. The following day a physician of Vivian, Louisiana, was called to attend Mrs. Thompson for the injuries sustained by her, and while there he noticed that plaintiff Thompson's condition was not good. On the third day following the collision, or November 5, 1935, he became worse in that he was dropsical, which means that the heart's compensating was not properly taking care of its work, and his breathing was shorter. From that date until the time of his death on April 13, 1937, he was almost constantly confined to his bed.

■ The medical testimony in the record on the question of whether or not Thompson's myocarditic condition was aggravated or accelerated by fright and shock resulting from the collision is conflicting. Two experts offered by the defense gave negative answers thereto, while a similar number on the opposing side thought otherwise. Our analysis of the various views, theories and opinions expressed by all of them, considered in connection with the uncontradicted testimony of the lay witnesses that plaintiff satisfactorily carried on the ordinary pursuits of life during the three-year period immediately preceding the accident, compels us to conclude, as did the trial judge, that the attack occurring on November 5, 1935, was directly traceable to the collision. Accordingly, if he had lived an award for damages against defendants would have been his.

■ The next question for determination is: Did his right of action accrue to or survive in favor of his wife, Mrs. Louise Catherine Thompson, as she contends? We are of the opinion that it did, and that she is entitled to whatever judgment that her husband would have recovered had he lived. The first paragraph of article 2315 of the Revised Civil Code provides:

"Every act whatever of man that causes damages to another, obliges him by whose fault it happened to repair it; the right of this action shall survive in case of death in favor of the children or surviving spouse of the deceased or either of them, and in default of these in favor of the surviving father and mother or either of them, and in default of any of the above persons, then in favor of the surviving brothers and sisters or either of them, for the space of one year from the death; provided that should the deceased leave a surviving spouse, together with minor children, the right of action shall accrue to both the surviving spouse and minor children; provided further, that the right of action shall accrue to the major children only in cases where there is no surviving spouse or minor child or children."

The aforequoted stipulation discloses that no issue was ever born of the marriage of plaintiff Thompson and his said wife, and that he left no ascendants or descendants.

Furthermore, the widow's statutory claim was asserted and prosecuted within one year from the date of her husband's death. The matter of the survival of rights of action under said article 2315 of the Civil Code is fully discussed by the Supreme Court of this state in Thompson v. New Orleans Railway & Light Co., 145 La. 805, 83 So. 19, and that case is authority for and in substantiation of our holding on the issue presently under discussion.

Mrs. Thompson also asks, as before stated, that she be awarded damages allegedly sustained by her by reason of the death of the husband. In this regard the second paragraph of Civil Code article 2315 is invoked. This reads:

"The survivors above mentioned may also recover the damages sustained by them by the death of the parent or child or husband or wife or brothers or sisters as the case may be."

The record does not show with legal certainty that plaintiff Thompson's death resulted from the automobile collision. It is to be remembered that the accident occurred on November 2, 1935, while his demise did not take place until more than seventeen months thereafter, or on April 13, 1937. Although he was almost continuously bedridden during that period, his condition was at certain times therein better than at others. In view of these circumstances, we must hold that his death was too remotely connected with the accident, if at all, to warrant the imposition of damages therefor.

The Supreme Court, in the case of Reed v. Warren, 172 La. 1082, 136 So. 59, stated (page 62):

"It is only in those cases where the death is caused by the fault of another person that the survivors of the deceased have a right of action for the damages suffered by them in consequence of the death. As to the right of action for the loss or suffering endured by the injured person, for which he had a right of action for damages, the survivors have the right of action, in case of his death, and for the period of one year after his death, whether he dies in consequence of the injury or from some other cause. Chivers v. Roger, 50 La.Ann. 57, 23 So. 100; Payne v. Georgetown Lumber Co., 117 La. 983, 42 So. 475; Thompson v. New Orleans Ry. & Light Co., 145 La. 805, 83 So. 19; Flash v. Louisiana Western Railroad Co., 137 La. 352, 68 So. 636, L.R.A.1916E, 112; Kerner v. Trans-Mississippi Terminal Railroad Co., 158 La. 853, 104 So. 740."

The trial judge rendered judgment in favor of Mrs. Thompson for $3,500, "for the injuries, suffering and death of her husband, Thomas Leonard Thompson, deceased." As observed in the preceding paragraph, we think that damages for the death should not have been imposed. However, it is our belief that the amount named is reasonable and proper and should be granted for the injuries and suffering experienced by the husband, in view of his long period of confinement. Such amount is not inconsistent with awards shown in the jurisprudence of this state involving disabilities of similar nature and import.

In the original petition, plaintiff Thompson asked judgment for hospital expenses of $166, physician charges of $190, and repairs to his automobile of $28.95. The evidence sustains a finding that these items of indebtedness are correct and were incurred by reason of the collision, and judgment therefor should be rendered in favor of Mrs. Thompson.

In the accident the wife sustained cuts on the little, second and third fingers of one of her hands, on her head, and on one of her legs just below the knee. She was taken to the sanitarium in a dazed condition, and while there six stitches were required for the head injury, and a similar number for the fingers. Scars resulted from the cuts on the head and on the little finger. There also followed a stiffness of the fingers, with some soreness, and this interferes slightly with the performance of her household duties. For her personal injuries, just described, Mrs. Thompson was allowed the sum of $500. This, we think, is neither excessive nor inadequate.

For the reasons assigned, the judgment is amended by increasing it to the extent of $384.95, so as to include the aforedescribed hospital, physicians and automobile repair expenses, and as thus amended it is affirmed with costs.