This is an appeal by plaintiff, Calanthe Olivier Walker, from a judgment rejecting her claim against Joseph P. Geddes Funeral Service, Inc., for $15,545 for injuries sustained by her mother, Mrs. Thomas Walker (known as Lily Walker), and for her ensuing death, through the alleged negligence of the employees of the defendant.
Plaintiff alleges that on January 31, 1943, her mother became ill while at work at 4104 St. Charles Avenue, and that defendant was employed to remove her by ambulance to plaintiff's home at 919 Marengo Street; that while the employees of defendant were carrying her on a stretcher, they negligently dropped her, as a result of which she sustained a severe blow on the head, contusions of the arm and a broken right hip, which brought about her death.
Defendant admitted its employment for the alleged purpose, but denied that Lily Walker died as a result of injuries received in falling from the stretcher.
The lower court rejected plaintiff's demands.
The facts show that plaintiff is the only child of Lily Walker, issue of her marriage with Thomas Walker, deceased. Lily Walker had been employed by Mrs. Albert Mackie as a domestic and companion for approximately 48 years; she was born in 1867, and at the time of her death was 76 years of age; she lived at the home of Mrs. Mackie. On Sunday morning, January 31, 1943, at about 5 o'clock, Mrs. Mackie, upon being summoned by one of the male servants, found Lily Walker on the floor of the lower back hall leading to the kitchen, and ascertained that she had suffered a stroke. Lily Walker was carried to her room on the second floor and placed in bed, and later that afternoon defendant's ambulance was sent to take her to plaintiff's home.
The ambulance attendants found that it was impossible to maneuver a stretcher along the back stairway, and for that reason Lily Walker was carried into the principal part of Mrs. Mackie's home so that she could be taken down the front stairway. There is a landing about midway on this stairway, and while being carried down Lily Walker slipped from the stretcher, feet first, to the stairs, falling for a distance variously estimated at from 21/2 feet to 4 feet. This stairway was covered with a carpet, and beneath the carpet was a felt pad.
Two employes of the defendant made the visit to Mrs. Mackie's home, and they enlisted the services of Columbus Noble, Mrs. Mackie's chauffeur, and Steve Johnson, her butler, to help carry out the stretcher bearing Lily Walker.
Plaintiff charges that defendant's employees were negligent in permitting her mother to suffer the fall; that the injuries received brought about total paralysis of the entire right side of her body, and that the injuries and shock which she sustained brought about her death. Plaintiff claims that she is entitled to recover $10,000 for the loss of the love, affection and companionship of her mother, and the further sum of $5,000 which Lily Walker would have recovered had she lived, and also the sum of $545 for the expenses of the burial of Lily Walker.
The evidence shows that early in the morning of the day on which the accident occurred, Lily Walker had suffered the stroke aforesaid; that on that afternoon, before the arrival of defendant's ambulance, Dr. P.L. Querens, under whose care Lily Walker had been for several years, was summoned to treat her for the stroke. Dr. Querens found that "She had a cerebral hemorrhage; in other words a hemorrhage into her brain; she had severe convulsions. She had suffered with high blood pressure for a long period and she had a cerebral hemorrhage, giving her a severe convulsion." He further testified that she showed no signs of paralysis at the time, was subconscious, and that her condition was very grave. He remained with her for about one-half an hour; he again saw her the next day at the Marengo Street address, at which time she was unconscious, and his examination disclosed that the patient had contusions of the right face, the right forearm, and the right thigh, all of which appeared to be about the size of 2 inches by 2 inches. *Page 572 
Lily Walker died on February 7, 1943, and according to the certificate of death executed by Dr. Ouerens, the primary cause of death was cerebral hemorrhage, and the contusions of the face, right forearm and right leg were listed as contributing causes.
Dr. C. Grenes Cole, Coroner for Orleans Parish, who testified for defendant, stated that he held an autopsy on the body of the deceased, and that he found evidence of contusions on the right side of the head in the temporal region, and slight contusions of the right forearm and right leg.
[1] Victor L. Chauvin and Arthur Richardson, the employees of the defendant, testified. Both described in detail how the stretcher was carried down the stairway, and agreed that Lily Walker slipped out of the right side through the right front corner of the cot. It is quite apparent from the testimony that as the two persons carrying the front end of the stretcher stepped down the stairway, they failed to raise the stretcher to compensate for the lower level upon which they were standing, causing it to incline towards the front end. Under the circumstances, there is no doubt that defendant's employees were guilty of negligence.
As before stated, Lily Walker lived for seven days after the fall from the stretcher, and the question is tendered whether the injuries which she received caused or accelerated her death.
[2-4] Lily Walker suffered the stroke on January 31, 1943, and her condition was considered by Dr. Querens as "very grave." She was mortally ill when placed upon the stretcher by defendant's employees, but notwithstanding her debility the defendant owed her the duty of safely transporting her in its ambulance. The law is well settled that the duty of care and of abstaining from injuring another is due to the weak, the sick and infirm equally with the healthy and strong, and when there is a violation of that duty the measure of damage is the injury inflicted, and if a pre-existing disease is brought to a crisis by negligence, a recovery for personal injuries resulting therefrom is authorized against the wrongdoer, as well as a recovery for death resulting from the accident. Lapleine v. Morgan's L. T. R. S. S. Co., 40 La. Ann. 661, 4 So. 875, 1 L.R.A. 378; Shaffer v. Southern Bell Telephone Telegraph Co., et al., 184 La. 158, 165 So. 651, 655. In the latter case the Supreme Court said:
"In Behan v. John B. Honor Co., 143 La. 348, at page 351, 78 So. 589, 590, L.R.A. 1918F, 862, this court said: 'But it is well settled in the jurisprudence elsewhere that the fact that a person was already afflicted with a dormant disease that might some day produce physical disability is no reason why he should not be allowed damages or compensation for a personal injury that causes the disease to become active or virulent and superinduces physical disability.' Citing Hilliard v. Chicago City R. Co., 163 Ill. App. 282; Larson v. Boston Elevated R. Co., 212 Mass. 262, 98 N.E. 1048.
"In Hooper v. Standard Life Accident Ins. Co., 166 Mo. App. 209, 148 S.W. 116, it was held that: 'Where a man is so afflicted that he will die from such affliction within a very short time, yet if, by some accidental means, his death is caused sooner, it will be a death from "accident," within the meaning of the terms of an accident insurance policy.'
"There can be no doubt such is the law, because it has been adopted by practically every court which has had occasion to pass on the question. And it follows, of course, that if a pre-existing disease brought to a crisis by accident authorizes a recovery for personal injuries resulting from the accident it also authorizes a recovery from death resulting from the accident."
In Louisville N. R. Co. v. Northington, 91 Tenn. 56, 17 S.W. 880, 882, 16 L.R.A. 268, the court said: "* * * A man might be suffering from an incurable disease, or a mortal wound, with only two days to live, when a negligent wrong-doer inflicted upon him an injury which in his condition of debility took his life, or developed agencies which destroyed him in one day, and yet the latter wrong be in a legal sense the cause of his death, though it only hastened that which on the next day would have inevitably happened. * * *" *Page 573 
The Supreme Court of Alabama, in Louisville N. R. Co. v. Jones, 83 Ala. 376, 3 So. 902, 904, said: "* * * Even if Mrs. Jones had pneumonia, or incipient pneumonia, at the time she received the injury, and it could be known that she would ultimately die of that disease, this would not necessarily, and as a matter of law, relieve the railroad of all responsibility. If the injury was caused by the negligence of the railroad company, under the rules declared above, and if it contributed to and hastened her death, then the corporation would not be guiltless. Tidwell v. State, 70 Ala. 33; Whart.Hom. § 382. This would be so in criminal prosecutions, and must be at least equally so in a civil suit, such as this. In such case the wrong and injury are, in fact, the cause of the death. * * *"
See also Meekins v. Norfolk S. R. Co., 134 N.C. 217,46 S.E. 493, where it was held that recovery might be had for a death if the cause was a disease but the disease was accelerated and death hastened by the negligent act of the defendant.
In San Antonio Public Service v. Mitchell, et al., Tex.Civ.App., 238 S.W. 265, 267, we find the following language: "If, as the jury must necessarily have found, the injury to Mrs. Mitchell so weakened her powers of resistance to the attacks of the tuberculosis germs that they seized upon and destroyed, or impaired, her lungs, and thus hastened her death, then the proximate cause of her death was the negligence of appellant. * * *"
[5] The burden rested upon plaintiff to prove that the injuries resulting from the fall caused or accelerated the death of Lily Walker. The only medical evidence is that of Dr. P.L. Querens, and Dr. C. Grenes Cole, the coroner. Briefly summarizing the testimony of the former, we find that Lily Walker had suffered from high blood pressure and was under his care for some years preceding her death. Dr. Querens stated that in his opinion the fall reduced the chances of Lily overcoming her condition brought about by the stroke, and that without the fall her chances of recovery would have been better. His testimony is to the effect that her blood pressure on March 31, 1941, was 220 over 140, which was a warning sign of the likelihood of a hemorrhage, and that when a person of her age with that blood pressure suffers a hemorrhage there is very little chance of a recovery. He stated also that when he saw her on January 31, 1943, before the fall, his prognosis was that her condition was very grave. He was asked if, in his opinion, the patient would have died had she not suffered the contusions and bruises, and he answered: "A strong possibility, yes." He was then asked by plaintiff's attorney: "But would you say that it did cut off some expectancy?", to which he replied: "I feel certain that they did. If you want my opinion, that is my opinion."
Dr. C. Grenes Cole, the coroner, held an autopsy which showed, "hypertension, generalized arteriosclerosis, cerebral hemorrhage, apoplexy, contusion of right side of head, temporal region, slight contusion of right forearm and right leg, with no evidence of fracture." He said, "It wasn't as massive a hemorrhage as you get from a traumatic condition, like a subdural hemorrhage, as you would get from a massive subdural hemorrhage", and that the cause of the hemorrhage "was a break in the cerebral vessels, a rupture of the cerebral vessels." He further said, "The vessel had ruptured and there was a hemorrhage outside the vessel, in the ventricle", and "She showed definite manifestations of arterio-sclerosis, and, from the extent of it, I would judge that she had had it for some time." The vessels showed considerable age and the hemorrhage was sufficient to cause death. He said the contusions on the side of her face were superficial and were not sufficient to cause death, and "I didn't think that they had anything to do with the cause of death."
On cross examination Dr. Cole stated, "I don't know that the fall played any part at all in this case; in my opinion it did not." He further said, "I don't think this fall hurt this woman at all." He testified that in his opinion the fall played no part in producing her death, because "I think that she had a sufficient hemorrhage to cause her death before they ever put her on the stretcher."
[6] There existing this irreconcilable conflict in the testimony of the two physicians, we are unable to say that plaintiff *Page 574 
has carried her burden of proving that the contusions sustained by her mother following the fall from the stretcher in any wise accelerated her death. As a prerequisite to a recovery, it was incumbent upon plaintiff to successfully make such showing, and our opinion is that she has not done so.
The court below evidently believed that the testimony of Dr. Cole should prevail, otherwise the plaintiff's suit would not have been dismissed. Some of the medical testimony was taken by agreement of counsel out of the presence of the court, and our careful reading of the record leads us to the conclusion that the trial court's findings of fact are correct. Dr. Qnerens admitted that he could not state definitely that Lily Walker's death was hastened by the fall, and the judgment appealed from is correct insofar as it absolves defendant from liability for the death of Lily Walker.
[7] However, plaintiff has claimed the sum of $5,000 "which her mother would have recovered had she lived" and this claim poses a different proposition. Article 2315 of the Civil Code provides in part: "Every act whatever of man that causes damage to another, obliges him by whose fault it happened to repair it; the right of this action shall survive in case of death in favor of the children, including adopted children, or spouse of the deceased, or either of them, and in default of these in favor of the surviving father and mother or either of them, and in default of any of the above persons, then in favor of the surviving brothers and sisters, or either of them, for the space of one year from the death; provided that should the deceased leave a surviving spouse, together with minor children, the right of action shall accrue to both the surviving spouse and minor children; provided further, that the right of action shall accrue to the major children only in those cases where there is no surviving spouse or minor child or children. * * *"
The Supreme Court has held that if a person is injured by the fault of another, a right of action arises at once in his favor, and in case of his death, survives in favor of the particular beneficiaries named in the above quoted paragraph of the article, whether the deceased died from the particular injuries received, or from other causes. Payne v. Georgetown Lumber Co., 117 La. 983, 42 So. 475; Badie v. Columbia Brewing Co., 142 La. 853, 77 So. 768; Thompson v. New Orleans Ry. 
Light Co., 145 La. 805, 83 So. 19; Reed v. Warren,172 La. 1082, 136 So. 59; Norton, et al., v. Crescent City Ice Mfg. Co., Inc., 178 La. 135, 150 So. 855; Thompson, et al., v. Travelers Ins., Co., et al., 182 So. 356.
[8] The physical injuries sustained by Lily Walker, according to the medical testimony, appear not to have been serious, but nonetheless she did sustain some injuries, and had she lived she would have been entitled to a recovery against the defendant for them. There is a conflict in the testimony as to whether Lily Walker was conscious when she was placed on the stretcher; Dr. Querens' testimony is to the effect that she was subconscious, and that when he saw her the following day she was unconscious. We believe that the defendant would have been liable to Lily Walker for damages in a nominal amount, had she survived the stroke, and whatever right of action she would have had was transmitted, upon her death, to the plaintiff. In view of the superficial injuries sustained by Lily Walker, and of the doubt which exists as to whether she experienced pain as a result thereof, we believe that an award of $100 to plaintiff would be adequate compensation for the injuries, pain and suffering sustained by Lily Walker through the defendant's negligence.
For the reasons assigned, the judgment appealed from is reversed, and it is now ordered, adjudged and decreed that plaintiff have judgment against the defendant for the sum of $100, with legal interest from judicial demand; defendant-appellee to pay all costs.
Reversed. *Page 575