GLADNEY, Judge.
The instant case involves an ex delicto claim initially filed by William A. Phillips who died prior to trial. His widow and daughter have been substituted as parties plaintiffs. A suit arising from the same accident has been filed for workmen’s compensation against Hardware Mutual Casualty Company and Cub Beverage Company, Inc., (La.App., 209 So.2d 798 docket) and is consolidated with the instant case.
Phillips, an employee of the Cub Beverage Company, Inc., on June 22, 1964, while driving his employer’s Volkswagen automobile, stopped at a signal light on Market Street in Shreveport where it was struck from the rear and knocked into the preceding vehicle by a car driven by Neva Rhodes Temple, the insured of the Liberty Mutual Insurance Company.
The primary question for resolution is whether or not the accident of June 22, 1964 activated or accelerated the development of a pre-existing malignant brain tumor which first manifested symptoms approximately a month later.
. Resolution of the question must be found in our appraisal of the opinions expressed by Doctors Philip H. Bonn and Heinz K. Faludi, prominent neurosurgeons of Shreveport, who arrived at different conclusions. Dr. Bonn, by surgery removed the brain tumor and personally treated Phillips. Dr. Faludi’s testimony was given in response to a hypothetical question eliciting his opinion as to whether the accident had accelerated the development of the tumor. The hypothetical question as posed faithfully relates the material facts. It reads:
“* * * That on June 22, 1964 a car which was driven by Mr. William A. Phillips was struck upon the rear while in a stopped position and that the blow knocked -the car forward so that the front end of ■ the Phillips vehicle struck a car that was at a ’standstill in front of it; that minor damages was done to the front and rear portions of the Phillips vehicle; Mr. Phillips’ head did not strike anything as a result of the accident, nor was he rendered unconscious; however, he immediately started having a stinging pain in the neck and occiput and temples and began having headaches; that at the time he was employed as a salesman and he continued in that employment following the accident; he first sought medical attention following this accident on July 14, 1964 when he was seen by Dr. Stuart DeLee; on that occasion his complaints were that of headaches and discomfort in the neck area; an analgesic and muscle relaxant medication was prescribed; Mr. Phillips was next seen by Dr. DeLee on July 20th, at which time his complaints consisted of headaches and a feeling of weakness; he advised the doctor that Anacin would afford him some relief from his headaches at that time; he returned on July 21, continuing to complain of headaches, and on that occasion Dr. DeLee had x-rays made of the neck which were negative for any type of abnormality; on July 24th Mr. Phillips reported to Dr. DeLee complaining of blurring vision and continued headaches and when seen several days later he complained of being weak, having an unsteady gait, nausea, and of sleeping for prolonged periods; he was referred by Dr. DeLee to Dr. Philip Bonn; Dr. Bonn on July 27 examined Mr. Phillips and at that time his complaints consisted of generalized headache, retro-orbital pain, blurring vision, unsteadiness of gait, nausea, and prolonged periods of sleeping; Dr. Bonn’s neurological examination showed a white male who was mentally sluggish, the visual fields appeared normal, pupils equal extraocular movements showed no paresis, funduscopic examination showed the optic disc edges to be indistinct, a flame hemorrhage at 9:00 o’clock on the left and papilledema seemed to be greater on the left, that there was equivocal left facial paresis and equivocal left deep tendon reflex increase, no other abnormalities were noted; on that same date, July 27th, a carotid arteriogram showing a right temporal lobe mass was made, the *797 arteriorgram was made showing a right temporal lobe mass; there was no evidence indicating any epidural or subdural hematoma; a lumbar puncture was made which reflected elevated pressure with the fluid clear but with elevated protein; on July 30 the patient was subjected to a right frontal temporal craniotomy and a deep temporal parietal tumor was encountered about the size of a peach; this was removed surgically and the patient had an uneventful post-operative course; after the third day he was ambulatory, his headaches had subsided, there was no weakness, but deep tendon reflexes on the left were increased in comparison to the right; the pathological report of the removed tumor reflected a brain tumor classified as a glioblastoma;' there was no hemorrhaging found in the tumor noted, nor was there any hemorrhaging found in the tumor area or in any of the area explored; following surgery Mr. Phillips appeared to be progressing satisfactorily; however, shortly prior to October 16, 1964, he began once again to experience severe headaches and weakness and on October 16th was admitted to the Schumpert Sanitarium where his condition continued to deteriorate and he died on November 6, 1964. * * * ”
In rejecting any relationship between the accident and the pre-existing condition, Dr. Faludi grounded his opinion on, first, the absence of hemorrhage, concussion, unconsciousness and nausea, which could have precipitated edema, and second, the lapse of approximately a month before any symptoms of the tumor appeared. Concluding his testimony, this witness stated:
“ * * * So I can’t find evidence that there was any cerebral edema after the accident. And the only evidence we really have is the usual cervical sprain after this type of injury. I can’t think of any other aggravation to a tumor that would hasten the progression of the tumor or hasten the symptoms. Offhand I would therefore have to say that no doubt the man suffered an injury; no doubt he had a cervical sprain; but I believe he had the preceding tumor and from all I can deduce here is that this tumor took its natural course as one may expect with the symptoms coming to the fore about a month after the accident.”
Dr. Bonn testified there was no way to say within any degree of certainty as to how long the tumor had been present. His estimate was nine months, which he qualified by saying that a person with such a malignant tumor cannot be given a true prognosis as its progression must be reappraised from day to day; and that there was no way of saying how long a man could possibly expect to live that had a tumor in the condition he found, even had it been removed. He was of the opinion the trauma had accelerated the tumor and brought it to a crisis due to edema or swelling resulting from increase fluid retention of the brain. The witness stated the accident brought about “a shearing action of the brain” but the record does not otherwise give any reason for this assumption and the conclusion so reached is without supporting evidence.
Certain authorities cited by appellants hold that a tort feasor takes his victim as he finds him and is entitled to recovery where a negligently inflicted personal injury aggravates or brings' to a crisis a preexisting disease or condition. Representative of these cases are Shaffer v. Southern Bell Telephone & Telegraph Company, 184 La. 158, 165 So. 651 (1936); Walker v. Joseph P. Geddes Funeral Service, La.App., 33 So.2d 570 (Orl.1948); Payton v. Great American Indemnity Company, La.App., 83 So.2d 575 (2nd Cir.1955), and others. We do not take issue with these cases and the legal principles which they pronounce. Appellants, pointing to the undisputed fact that Mr. Phillips had enjoyed good health and no symptoms at all prior to the accident, argue further that where there is a reasonable possibility that the accident caused the flare-up of the dormant disease when viewed in the light of all the circumstances surrounding the case, recovery *798 has been allowed, emphasizing the ruling in Peppers v. Toye Brothers Yellow Cab Company, La.App., 198 So. 177 (Orl.Cir. 1940) wherein a number of cases are cited and discussed. But it is out appreciation of the evidence, viewed in the light of all the circumstances surrounding the case, that it fails to demonstrate that the causation sought to be proved is more probable than not. An important factor prompting this conclusion is that more than a month passed before any symptoms became manliest indicating the presence of the malignant tumor.
Therefore, we hold that plaintiffs have failed to carry their burden of supporting their case by a preponderance of the evidence, by which “* * * is meant, simply, evidence which is of greater weight, or more convincing, than that which is offered in opposition to it; that is, evidence which as a whole shows that the fact or causation sought to be proved is more probable than not.” Gassiott v. Gordey, La.App., 182 So.2d 170, 175 (3rd Cir.1966).
In accordance with out determination of the issues presented herein plaintiffs are entitled to judgment in the sum of $2,000 by reason of the mild cervical sprain received by William A. Phillips, which award is subject to the subrogation rights of the Hardware Mutual Insurance Company in the sum of $878.45 as reflected in the petition of intervention for workmen’s compensation benefits paid by inter-venor.
The judgment from which appeal is reversed and judgment is now rendered in favor of plaintiffs herein, Viola Harlan Phillips and Gussie Lee Wilson, the widow and sole heir, respectively, of William A. Phillips, against Liberty Mutual Insurance Company in the full sum of $2,000 with legal interest thereon from judicial demand until paid. It is further ordered that inter-venor, Hardware Mutual Insurance Company have judgment for the sum of $878.-45 from the proceeds of the judgment here-inabove rendered.
Liberty Mutual Insurance Company is taxed with costs of this suit.