617 So.2d 192 (1993)
Charlie BARKS & Mona Barks, Plaintiffs-Appellees,
v.
MAGNOLIA MARINE TRANSPORT COMPANY, Defendant-Appellant.
No. 92-579.
Court of Appeal of Louisiana, Third Circuit.
April 7, 1993.
Writ Denied July 1, 1993.
*193 Jennifer J. Bercier, Cameron, for Charlie and Mona Barks.
Frank J. Dantone, Greenville, MS, Robert Samuel Dampf, Lake Charles, and Ernest Tucker Gore, Greenville, MS, for Magnolia Marine Transport Co.
Before DOUCET, YELVERTON and COOKS, JJ.
YELVERTON, Judge.
In this personal injury case brought by a seaman against his employer under the Jones Act, the trial judge found for the seaman and the employer appealed.
Magnolia Marine Transport Company, the employer, contests the finding that the injuries complained of by Charlie Barks, the seaman, were related to his accident aboard the M/V MARY ANN. Magnolia Marine also complains that the trial judge should have found Barks contributorily negligent. It claims error in the trial judge's rulings that Barks was entitled to loss of future wages and damages, and that his wife was entitled to loss of society damages. Magnolia Marine claims also that the trial judge abused his discretion in not reopening the evidence to allow it to file a copy of Barks' death certificate in the record prior to signing the judgment. Magnolia Marine finally appeals the award of prejudgment interest on both past and future damages and the award of witness fees for certain expert witnesses. Except for the award of damages for loss of society we affirm.
The factual basis for this action was an incident occurring on December 7, 1987 aboard the M/V MARY ANN, a towboat owned by Magnolia Marine. Barks was the captain. Barks asked Jack Wright, the pilot in the wheelhouse, to hand him the vessel logs. Barks was standing in the stair landing below the wheelhouse. The logs were in a 9" × 15" manila envelope. Wright dropped the envelope to Barks who did not see it coming and it hit Barks in the left eye causing damage to the eye. Reacting to this unexpected event, Barks twisted his body and injured his back. It was the back injury that brought on this lawsuit.
For the injury the doctors did a lumbar laminectomy at the L4-5 level to take the pressure off of the nerves in his lower back, which was causing pain there and going down the left leg. Several months later Barks was hospitalized again due to increasing leg pain. A diskectomy at L4-5, a Gill Laminectomy of L5, and a fusion from L4 to the sacrum were performed. These procedures were not very successful and Barks suffered residual disability.
Barks and his wife Mona filed suit against Magnolia Marine pursuant to the Jones Act and General Maritime Law. They alleged the negligence of Magnolia Marine and that the M/V MARY ANN was unseaworthy.

*194 LIABILITY
We adopt, from the trial judge's excellent reasons for judgment, his entire findings on this subject:
The plaintiff, Barks in this case, was a Jones Act seaman on the day of the accident and as such entitled to the warranty of seaworthiness and the protection from the negligent acts of his employer through its agents and employees.
There was no evidence that the vessel was unseaworthy. On the proposition that an incompetent crew renders a vessel unseaworthiness [sic], there was some argument that the co-worker, Wright, was incompetent. A single act of negligence does not signal an incompetent seaman. No other evidence reflected even remotely on Wright's abilities.
On the issue of negligence under the Jones Act, it is said that any negligence, no matter how slight, is sufficient to sustain a finding of liability. McFarland v. Justiss Oil Company, Inc., 526 So.2d 1206 (La.App. 3d Cir.1988). The actions of the pilot Wright leading to the accident of December 7, 1987 were clearly careless and, under these circumstances, negligent in law. When Wright lifted the envelope from the console to give to Barks, it became Wright's duty to make a safe delivery. While a manila envelope is not normally considered a dangerous object, if it is tossed or dropped in the direction of another's face, it can become a dangerous projectile. The danger of Wright's action was manifested in the result.
Defendant alleges Barks' contributory negligence. On this question, another proposition comes into play. It is that a seaman's duty to protect himself is slight. Slay v. Quarles Drilling Co., 534 So.2d 1300 (La.App. 4 Cir.1988). Under the facts of the accident, even if Barks did tell Wright to "drop" the envelope and not "hand" it to him, Barks had no way of knowing the weight of the object nor the direction and velocity Wright would use in delivering the envelope. Barks' action in asking for the envelope was not unreasonable and the ensuing events were unforeseeable from his point of view. He is not guilty of any contributory negligence.
Although the spondylolithesis [sic] diagnosed in the plaintiff was congenital, it was explained that a trauma can aggravate a latent problem and render it symptomatic. That is the medical finding of this court. Liability for the subsequent pathology lies with the employer under the Jones Act. McFarland, supra; Miley v. Landry, 582 So.2d 833 (La.1991).
A Louisiana appellate court's standard of review of the decision of the finder of fact in a suit under the Jones Act, is the same limited standard as that of the federal courts. Trahan v. Gulf Crews, Inc., 260 La. 29, 255 So.2d 63 (La.1971). Under federal law and jurisprudence, an appellate court cannot disturb the finding of fact on the merits unless there is no reasonable evidentiary basis for the fact found. Id. Applying the relaxed burden of proof and limited standard of review for Jones Act cases, as we must, we have no hesitancy in affirming the finding that the manner in which the envelope was delivered to Barks was negligent. Likewise, there is no error in the finding that the congenital back defect was rendered symptomatic as a result of the accident. Finally, the trial judge was correct in finding that Barks was not contributorily negligent.

DAMAGES
The trial judge awarded $142,672.64 for past lost wages and $217,657.91 for future lost wages. Barks was awarded $26,039.35 for past medical expenses, but nothing for his too-speculative claim for future medical expenses. The court awarded damages for past and future pain and suffering in the amounts of $60,000 and $25,000, respectively. His wife was awarded $12,000 for loss of society.
The trial judge fixed maintenance at an amount based on a stipulation. This amount is not disputed.
The trial ended August 26, 1991. Reasons for judgment were handed down October 31, 1991. On November 13, 1991, Magnolia *195 Marine filed a motion to reopen the case for additional evidence, or, alternatively, for a new trial based on newly discovered evidence. The evidence was Barks' death, which was alleged to have occurred on September 3, 1991. It was alleged that Barks' death was due to causes unrelated to the accident. The motion to reopen the case, or for a new trial, was denied.
Magnolia Marine later filed a motion to admit into evidence Barks' death certificate, which was also denied.
Magnolia Marine appeals the awards, attacking them on several grounds. It contends that the trial court was clearly wrong in ruling that Barks was entitled to future lost wages and future general damages, and wrong in awarding Mona Barks loss of society damages. It also claims that the trial judge was wrong in awarding interest on both past and future damages from the date of judicial demand, as well as awarding costs for certain expert witnesses. Magnolia Marine also questions the ruling of the trial judge in denying their motion to reopen the case for additional evidence, including Barks' death certificate.

FUTURE LOST WAGES AND FUTURE GENERAL DAMAGES
Magnolia Marine claims that the trial judge erred in awarding future lost wages and future general damages because at the time of trial, Barks was dying of lung cancer and had only a few days to live.
At the beginning of the trial, the attorneys and the judge agreed that Barks' deposition would be offered in place of his testimony because he was physically unable to testify. In her testimony later Mona admitted that Barks had cancer and had but a few days to live. There was no other testimony at the trial regarding Barks' condition.
Magnolia Marine cites Simon v. Smith, 470 So.2d 941, (La.App. 3d Cir.), writ denied, 476 So.2d 353, 476 So.2d 355 (La. 1985), for the proposition that the use of life expectancy tables to determine damages is disfavored when plaintiff has a preexisting condition or disease which adversely affects his or her projected life span, since the tables are based on lives of healthy persons.
We agree with this proposition but it does not apply in the present case. The only testimony in the record regarding Barks' condition was his wife's testimony. There is no evidence from any doctor regarding the amount of time that Barks had to live. Testimony from a layperson is not sufficient evidence for the trial court to use to discredit the life expectancy tables.
Magnolia Marine also had evidence from an economist regarding Barks' lost wages, but it did not have its economist calculate what Barks' future lost wages would be if he was not as healthy as the average person.
Magnolia Marine claims that the trial judge erred in denying its motion to reopen the case to submit evidence of Barks' death. The trial court's decision to reopen a case for additional evidence is discretionary and will not be disturbed absent clear abuse of discretion. Malbrough v. Wallace, 594 So.2d 428 (La.App. 1st Cir. 1991).
In tort cases the award is based upon the evidence at the trial of all past, future, and prospective harms. Jordan v. Travelers Insurance Company, 245 So.2d 151, 157 (La.1971). If Barks had died before trial, then his damages for loss of earnings and pain would have been fixed and ascertainable. Dark v. Brinkman, 136 So.2d 463, 469 (La.App. 3d Cir.1962).
In the present case Barks died after trial. Magnolia Marine had some knowledge at the trial of Barks' physical condition as evidenced by its cross examination of Barks' wife. Yet, as stated before, it did not introduce any competent testimony at trial that would allow the trial judge to consider that he should not apply the normal life expectancy tables in this case.
Since it was possible at the trial for Magnolia Marine to introduce evidence relating to Barks impending death, we find that the trial judge did not abuse his discretion in refusing to reopen the case to introduce evidence of Barks' death.

*196 LOSS OF SOCIETY DAMAGES
The trial judge awarded $12,000 to Mona for loss of society damages. Magnolia Marine claims that under the Jones Act there is no recovery for loss of society.
The 5th Circuit's position on this subject has changed since the trial of this case. In Murray v. Anthony J. Bertucci Const. Co., Inc., 958 F.2d 127 (5th Cir. 1992), cert. denied ___ U.S. ___, 113 S.Ct. 190, 121 L.Ed.2d 134 (1992), applying the Supreme Court holding in Miles v. Apex Marine Corp., 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990), the 5th Circuit stated that the Jones Act limits a seaman's recovery for injury to pecuniary losses and precludes any recovery for nonpecuniary losses, such as loss of society. The court in Murray did not allow the wife of an injured seaman to recover loss of society damages.
As a result of this change in the law, we hold that the trial judge was wrong in awarding loss of society damages to Mona.

PREJUDGMENT INTEREST
The trial court awarded prejudgment interest, dating from judicial demand, on all sums found due. Magnolia Marine complains that the award of prejudgment interest was error as regards future damages.
Under maritime law, the awarding of prejudgment interest is the rule rather than the exception, and, in practice, is well-nigh automatic. Reeled Tubing, Inc. v. M/V CHAD G, 794 F.2d 1026 (5th Cir. 1986). Prejudgment interest is ordinarily awarded from the date of loss. Id.
Prejudgment interest is allowable only on those measures of damages which are for past harms. These are the following: past loss of support, pain and suffering of the decedent, and medical and funeral expenses. Verdin v. C & B Boat Co., Inc., 860 F.2d 150 (5th Cir.1988).
The Louisiana Third Circuit, in conformity with Verdin, has held in two cases that prejudgment interest is not allowed on awards under general maritime law for loss of future earnings and future pain and suffering. Smith v. Flotation Services, Inc., 596 So.2d 343, 347 (La.App. 3d Cir. 1992); Savoie v. McCall's Boat Rentals, Inc., 491 So.2d 94, 107 (La.App. 3d Cir.), writ denied, 494 So.2d 334, 494 So.2d 542 (La.1986).
Three other Third Circuit cases have held, however, that the denial of prejudgment interest is limited to future non-economic damages. McFarland v. Justiss Oil Co., 526 So.2d 1206 (La.App. 3d Cir.1988); Babineaux v. Lykes Bros. S.S. Co., Inc., 608 So.2d 659 (La.App. 3d Cir.1992); and Gray v. Texaco, Inc., 610 So.2d 1090 (La. App. 3d Cir.1992), (our docket No. 91-922, on rehearing, February 5, 1993).
It is not necessary in the present case that we take sides on this difference of opinion. There are circumstances when a trial court may properly exercise its discretion to award prejudgment interest only to the date of judicial demand. Reeled Tubing, supra. We conclude that the trial court properly exercised its discretion in the present case. If we consider post-judgment damages to include pecuniary damages found by the trial court, the post-judgment and prejudgment damages are about equal. The trial judge could have awarded prejudgment interest on past damages from the date of the accident, and could have denied post-judgment interest altogether. By making all damages subject to interest, but dating only from judicial demand, the result is fair and certainly not an abuse of the trial court's discretion.

COSTS
Finally, Magnolia Marine claims the trial judge erred in awarding costs for certain expert witnesses who were witnesses on behalf of defendant and for whom Barks did not incur any witness expenses or costs.
A review of the trial court's judgment reveals that the trial judge taxed these costs to defendants as expert witness fees. La.R.S. 13:3666 allows the court to assess additional compensation for witnesses called to testify in court based on professional qualifications. These fees are taxed as costs against the party cast in judgment *197 and are based on the testimony of the expert relative to his time rendered and the cost of his services. These are fees which are paid to the expert for his time and do not reimburse the parties to the action for the costs they have incurred in obtaining the expert's testimony.
Also, experts who testify by deposition are entitled to expert witness fees, just as are experts who testify at trial. Laughlin v. Breaux, 515 So.2d 480 (La.App. 1st Cir. 1987).
It was not error for the trial judge to cast Magnolia Marine with the expert witness fees.

JUDGMENT
The judgment of the trial court is reversed as to the award of loss of society damages to Mona Barks. In all other respects the judgment is affirmed.
Costs of this appeal are assessed to Magnolia Marine Transport Company.
AFFIRMED IN PART, REVERSED IN PART.