640 So.2d 388 (1994)
Linda Breaux Fuller OSWALT, Executrix of the Succession of Jerald W. Fuller, Plaintiff-Appellant-Appellee,
v.
STATE of Louisiana, DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, Defendant-Appellee-Appellant.
No. 93-850.
Court of Appeal of Louisiana, Third Circuit.
March 30, 1994.
*389 Louis D. Bufkin, Lake Charles, for Jerald W. Fuller.
*390 Rick J. Norman, Lake Charles, for State, Dept. of Transp. and Development.
Before GUIDRY, DOUCET, KNOLL and COOKS, JJ., and CULPEPPER,[*] J. Pro Tem.
KNOLL, Judge.
This is an appeal from a judgment where the trial court refused to reopen the case, after argument, but before signing of the judgment, to receive testimony of the death of Jerald W. Fuller, the plaintiff, and declined to grant the State of Louisiana, through the Department of Transportation and Development (DOTD), the defendant, a new trial. The purpose of DOTD's motions was to present testimony of the effect of Fuller's death, from causes unrelated to the accident, on the trial court's damage awards for future pain and suffering and future loss of wages.
This case is a sequel to our earlier opinion in Fuller v. State, DOTD, 615 So.2d 494 (La.App. 3 Cir.1993). In our earlier opinion, we recognized that since Fuller died from causes unrelated to the accident after trial, but before the trial court signed the judgment, the trial court judgment in favor of Fuller was an absolute nullity because it was rendered in favor of a dead person. Thus, we remanded the case for the substitution of the legal successor of the deceased party.
After remand, on May 5, 1993, DOTD's motion to reopen the case for evidence was denied. The trial court then substituted Linda Breaux Fuller Oswalt, the executrix of the estate of Jerald W. Fuller (Estate), as the party plaintiff, found DOTD liable and awarded the Estate $60,000 for general damages, $15,000 for past loss of wages, $21,400 for future loss of wages, and past medical expenses of $31,105.18. DOTD's post-judgment motion for a new trial was also denied.
The Estate appealed the trial court judgment, contending that the trial court's quantum awards were excessively low. DOTD also appealed, contending that the trial court: (1) should have granted its motions for new trial on December 18, 1991, and May 6, 1993, as a result of Fuller's death after the close of oral testimony, but before the rendition of judgment; (2) awarded excessive amounts for pain and suffering and the future loss of wages; (3) erred in its inclusion of future pain and suffering and future loss of wages since Fuller died shortly after the close of oral testimony; and (4) DOTD is entitled to a refund from the Clerk of Court since it overpaid expert witness fees.

FACTS
Fuller sought damages for injuries he sustained on September 25, 1987, when the south end of the movable span bridge on Highway 27 at Hackberry, Louisiana dropped unexpectedly, causing his dump truck, which he operated for John Bailey Construction Company, Inc., to fall into the fixed span of the bridge.
At the conclusion of the non-jury trial, the trial court orally announced that it found DOTD totally liable for the accident and stated its quantum award in all respects except for the medical expenses. Because all of the medical expenses were not yet compiled, the trial court held the record open for the introduction of the computation of medical expenses associated with the accident. Before these medical expenses were submitted, Fuller died on November 8, 1991, from causes unrelated to the accident.
Before the judgment was signed, the trial court denied DOTD's motion to reopen the evidence to consider the effect of Fuller's death on certain damage awards made by the trial court. The trial court then signed a judgment in Fuller's favor on December 18, 1991. Afterwards, DOTD's motion for a new trial or remittitur on the grounds of Fuller's death was also denied. These judgments were appealed and, as indicated in our introduction, we declared the judgment a nullity because Fuller was dead when the final judgment was entered. Fuller, supra.
When this case was remanded to the trial court, DOTD filed a motion, seeking again to *391 reopen the case for the introduction of evidence of the effect of Fuller's death on the projections for his loss of future wages as well as his future pain and suffering. After denying DOTD's motion, a new judgment was signed on May 5, 1993, substituting the Estate for Fuller; none of the substantive elements of the earlier judgment were changed.
Subsequently, based on the same grounds elaborated in its motion to reopen the case, the trial court considered and denied DOTD's motion for a new trial and/or remittitur. These appeals followed.

MOTIONS TO REOPEN TESTIMONY AND FOR NEW TRIAL
DOTD contends that the trial court erred in denying its motions to reopen the case for the taking of additional evidence, as well as its motions for a new trial. The basis for both sets of motions was that the judgment contained awards for future loss of income and future pain and suffering. Its argument is that these motions should have been granted because Fuller's death occurred before the trial court signed the judgment and his death directly affected these awards.
Since the grounds for both motions are the same, we will consolidate our treatment of the trial court's denials.
From the outset, we note and distinguish our decision in Barks v. Magnolia Marine Transport Co., 617 So.2d 192 (La.App. 3 Cir. 1993), writ denied, 620 So.2d 876 (La.1993). In Barks, we found no abuse in the trial court's decision not to reopen the case for additional evidence of Barks's death prior to signing the judgment. In Barks, at the beginning of trial the litigants agreed to submit Barks's deposition in place of his testimony because he was unable to physically attend the trial. Thus, we hinged our opinion on the fact that Magnolia Marine had sufficient knowledge of Barks's severely diminished physical condition prior to trial and "did not introduce any competent testimony at trial that would allow the trial judge to consider that he should not apply the normal life expectancy tables in this case." Unlike Barks, Fuller was present for trial and there was no hint that he would die shortly after trial from causes unrelated to the accident. Therefore, we find Barks inapposite to the present case.
LSA-C.C.P. Art. 1631 provides, in pertinent part, that the trial court has the power to require that the proceedings shall be conducted so that justice is done. See, William T. Burton Industries, Inc. v. Monk, 372 So.2d 817 (La.App. 3 Cir.1979).
"When the record of a suit discloses enough to satisfy the court that the whole story of the case is not told, that essential facts have not been given in evidence ... and that substantial justice cannot be done between the parties in the state of the record as filed here, the court will, in its discretion, in the interest of justice, remand the case."
Succession of Robinson, 186 La. 389, 172 So. 429 (1936), quoting Muller v. Hoth, 105 La. 246, 29 So. 709 (1901). Furthermore, in Burthe v. Lee, 152 So. 100 (La.App.Orl.1934), our brethren noted:
"Lawsuits are not games in which courts are the mere referees or umpires, and in which technicalities must be allowed to triumph over actual justice. It is our duty to permit litigants all reasonable opportunity to place before us all facts bearing on the issues involved."
However, against that backdrop, we temper our references by further recalling that the trial court's decision to reopen a case for additional evidence is discretionary and will not be disturbed absent clear abuse of discretion. Malbrough v. Wallace, 594 So.2d 428 (La.App. 1 Cir.1991), writ denied, 596 So.2d 196 (La.1991).
In addition, LSA-C.C.P. Art. 1972 provides that a new trial shall be peremptorily granted, upon contradictory motion of any party, when the party has discovered evidence, since the trial, which is important to the cause and which could not have been obtained before or during the trial. Furthermore, LSA-C.C.P. Art. 1973 provides that the trial court may grant a new trial if there exists good grounds therefor. Commenting on Art. 1973 in Lamb v. Lamb, 430 So.2d 51, 53 (La.1983), the Louisiana Supreme Court stated:

*392 "A proper application of this article necessitates an examination of the facts and circumstances of the individual case. When the trial judge is convinced by his examination of the facts that the judgment would result in a miscarriage of justice, a new trial should be ordered. We have recognized that the court has much discretion regarding this determination. However, this court will not hesitate to set aside the ruling of the trial judge in a case of manifest abuse." (Citations omitted.)
After carefully reviewing the evidence, we find that Fuller's death came unexpectedly after the presentation of evidence but before the trial court signed a judgment. Accordingly, new evidence directly relevant to the element of future damages came into existence after the trial which DOTD could not have discovered earlier and could have been considered by the trial court without unduly delaying the resolution of the case. Therefore, in light of the applicable jurisprudence, we find that the trial court abused its discretion by refusing to consider the full story of the case and should have granted DOTD's motions to consider the impact of Fuller's death from unrelated causes on those elements of the quantum awards which related to his future loss of wages and his future pain and suffering.
We note that the trial court did not categorize its general damage award into past and future pain and suffering; thus, we are not able to simply delete any amounts for future pain and suffering, and then consider the Estate's contention that the remainder of the general damage award was abusively low under Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976), and its progeny. Likewise, we find it inappropriate to arbitrarily assign a percentage of the award to future pain and suffering and then make a deduction from the trial court's award. Moreover, since the elements for future pain and suffering were not differentiated in the trial court's general damage award, we are not able to examine the sufficiency of the general damage award under the Coco standard of review.
Notwithstanding the complications related to this issue, we find that we have a complete record of Fuller's injuries, and a remand is not necessary to redetermine his damages for past pain and suffering. See, Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975). Using this methodology, we must conduct a de novo review of the evidence, restricting ourselves to make an award based on Fuller's particular injuries and suffering from the date of the accident until his death, a period of approximately 4 years. Accordingly, we hereby set the trial court's ward of $60,000 general damages aside and review the issue de novo.
On the other hand, the trial court differentiated its award for loss of wages into past and future amounts. Accordingly, in light of our ruling herein, we must delete the trial court's award of $21,400 for Fuller's future loss of wages. We will then review under the Coco standard the Estate's contention that the trial court's award for the past loss of wages was abusively low.

GENERAL DAMAGES
On the date of the accident, Fuller was taken to Cal-Cam Hospital and X-rays were taken. When no broken bones were detected, Fuller was released and told that he would be extremely sore the following few days. Fuller returned to work and after a short time abandoned his work efforts because of continued pain from the accident.
Dr. William Foster, a neurologist, first examined Fuller in October of 1987. Fuller complained of low back pain. Physical examination revealed muscle spasms in the low back and a positive straight leg raising test. X-rays showed that he had spondylolisthesis, a pre-existing condition, and that this spinal condition had been aggravated by the accident. Dr. Foster prescribed pain medication and muscle relaxers.
Dr. Foster next saw Fuller on November 25, 1987. Fuller indicated that the medication had not improved his back condition. When his physical examination remained unchanged, Dr. Foster referred Fuller to Dr. Clark Gunderson, an orthopedic surgeon.
Dr. Gunderson first examined Fuller on March 4, 1988. Dr. Gunderson observed muscle spasms in Fuller's low back. He also *393 determined that Fuller was experiencing pain from nerve involvement.
Fuller was next seen on April 6, 1988, by Dr. Foster. Fuller complained of pain in the lumbar area.[1] Because of Fuller's continued pain, it was recommended that he be admitted to the hospital for a myelogram to evaluate these complaints.
Fuller entered Lake Charles Memorial Hospital on May 2, 1988, for the myelogram. From this examination, Dr. Foster determined that Fuller had an impressive spondylolisthesis of the L5 on S1.
At Fuller's next visit with Dr. Foster on June 8, 1988, there was no improvement and he was again referred to Dr. Gunderson for further evaluation. Both medical specialists thought that Fuller needed surgery.
In the following months, Fuller's surgery was postponed first for a skin infection and then because of a significantly reduced platelet count which adversely affected blood clotting. Fuller was examined by Dr. Francis Bride who opined that Fuller had cirrhosis of the liver and started him on a regimen to improve his platelet count.
By December of 1988, Fuller was able to improve his blood clotting sufficient to have surgery. He was hospitalized on December 18, 1988, and the following day, Dr. Foster performed a lumbar laminectomy and he decompressed the lateral recesses. At the same time, Dr. Gunderson obtained a bone graft from the back of Fuller's pelvis and completed a successful fusion at the L5-S1 level.
Drs. Foster and Gunderson followed Fuller after surgery. They both indicated that the surgical procedure was a success. As of February 1, 1989, Dr. Foster reported that the surgery had eased Fuller's pain. On March 3, 1989, Dr. Gunderson reported that the laminectomy and fusion were doing quite well, and that Fuller was continuing to improve; at this point, Dr. Gunderson began weaning Fuller from having to wear the back brace. On April 11, 1989, Dr. Foster again saw Fuller; he reported no complications and indicated to Fuller that maximum medical recovery would not take place until one year post-surgery. Dr. Gunderson examined Fuller on June 12, 1989. At that time he had no complaints of leg pain. X-rays showed a solid fusion and physical therapy regimen was initiated.
Dr. Gunderson's August 11, 1989, report indicated that Fuller was doing quite well, but that physical therapy had caused him to have some increased back pain. In order to strengthen muscles and optimize spinal motion, Dr. Gunderson continued physical therapy. Dr. Gunderson next saw Fuller on February 2, 1990. At that time, Fuller reported that he still had residual pain and when he undertook heavy activities he felt that "his back was coming apart". At this examination, Dr. Gunderson confirmed that there was a solid lumbosacral fusion, and concluded that Fuller had reached the maximum medical improvement. He believed that Fuller would be able to complete the work-hardening program. He also believed that Fuller could return to work, lifting 25 to 30 pounds with no repetitive bending or stooping. He then assigned him a 25% permanent impairment to the body as a whole.
Dr. Foster released Fuller to return to work in March of 1990. He assigned Fuller a permanent partial disability of 25 to 30%. He did not think that Fuller would ever be able to perform heavy manual labor and recommended that Fuller be enrolled in a vocational rehabilitation program to teach him another occupation. Dr. Foster did not expect that Fuller would ever be pain free, but that the back pain should not be incapacitating.
After being released by both doctors, Fuller was only seen by Dr. Gunderson in January and February of 1991. At that time he consulted Dr. Gunderson for a hand injury he incurred when he was involved in a barroom fight.
*394 As of the time of trial, Fuller still had complaints of pain. He said he had difficulty sleeping and that the pain interfered with his day-to-day activities. He further stated that there is no time when he is pain free and that sometimes the pain is terrible.
In summary, the record shows that Fuller had approximately 4 years of low back pain as a result of the accident. He had a preexisting condition of spondylolisthesis that became symptomatic with the accident. He underwent a myelogram, a lumbar laminectomy, and an interbody fusion. He incurred $31,105.18 of medical expenses and remained on pain medication to help control his pain and on "bad days" until his death. Under these circumstances and not finding it appropriate to make an award for future pain and suffering, we find that a general damage award of $75,000 is appropriate.

PAST LOSS OF WAGES
The Estate contends that the trial court abused its discretion in making its award for past loss of wages. It argues that the trial court should not be constrained to consider only Fuller's actual wage loss as of the time of trial but that it should have considered Fuller's loss of earning capacity. On the other hand, DOTD contends that in arriving at an award for past loss of wages it was proper for the trial court to consider Fuller's 25 year work-history as a good indicia of his earning capacity.
In Veazey v. State Farm Mut. Auto Ins., 587 So.2d 5, 7 (La.App. 3rd Cir.1991), we stated:
"In Louisiana tort cases, the plaintiff must prove by a preponderance of the evidence the damages caused by the tortfeasor's fault. Proof is sufficient to constitute a preponderance when it shows that the fact sought to be proved is more probable than not.
A claim for loss of earnings need not be proven with mathematical certainty, but only such proof as reasonably establishes plaintiff's claim.
* * * * * *
Earning capacity itself is not necessarily determined by actual loss; damages may be assessed for the deprivation of what the injured plaintiff could have earned despite the fact that he may never have seen fit to take advantage of that capacity. The theory is that the injury done him has deprived him of a capacity he would have been entitled to enjoy even though he never profited from it monetarily.
Before an appellate court can disturb a quantum award, the record must clearly reveal that the trier of fact abused its discretion in making the award. An award made by the trial court may not be modified unless it is unsupported by the record." (Citations omitted.)
Furthermore, we note that the trier of fact is not obliged to strike a balance between the economic estimates offered by plaintiff and defense. Instead, it is charged to award such amount as, all circumstances considered, is just compensation. Moreover, it is the prerogative of the trial court to accept the testimony of one witness over another if that economic evaluation is reasonably supported by the evidence. American Motorists v. American Rent-All, 566 So.2d 121 (La. App. 5 Cir.1990), affirmed in part, reversed in part, amended in part, 579 So.2d 429 (La. 1991).
As noted above, this accident occurred on September 27, 1987, and trial was held almost four years later on August 27, 1991. Fuller was 47 years of age when this accident occurred. His tax return for 1986 shows that he made total wages of $2,901.05; in 1987, the year of the accident, Fuller's wages totaled $6,089. A review of the evidence shows that throughout his lifetime, Fuller has not been regularly employed and never earned very much.
At the time of the accident, Fuller was performing heavy manual labor and was working as a truck driver earning between $6.00 and $10.50 per hour.
Glen Hebert, a vocational rehabilitation specialist, opined that as of the time of the accident, Fuller had an earning capacity of $417 per week.
Using Mr. Hebert's determination, Dr. Michael Kurth, an economist, stated that Fuller's *395 loss of earnings as of the time of trial was $59,542.08.
Allen Simmons, defendant's vocation rehabilitation expert, opined that Fuller did not suffer a loss of earning capacity. He based his opinion on Fuller's work history over an extended period of years and concluded that he never demonstrated any previous capacity to earn more than $8,000 to $9,000 per year.
Dr. Charles O. Bettinger, DOTD's expert economist, opined that Fuller had suffered no loss of earning capacity. He stated:
"At age 47, I assume that all of his training had been completed, for all practical purposes, and his demonstrated earning will reflect very well basically his earning capacity or his ability to earn at the time of the accident. If he had just finished school and hadn't had a chance to work, then, of course, we would have to estimate what his earning capacity would be if he was just entering the labor force ... but for a person aged 47 to 50, they should have an established work record that demonstrates what they will continue to earn over the remainder of their lifetime.
* * * * * *
Basically, it shows that he's a part-time worker, primarily, rather than a full-time worker. Whether this is by choice or no choice."
After carefully considering the evidence in light of the jurisprudence, it is clear that the trial court considered Fuller's work history as a relevant factor in its analysis of the expert testimony regarding any loss of Fuller's earning capacity during the time after the accident and before trial. See, Dupas v. City of New Orleans, 361 So.2d 911 (La.App. 4 Cir.1978), writ denied, 364 So.2d 121, cert. den'd, 440 U.S. 971, 99 S.Ct. 1534, 59 L.Ed.2d 788 (1979). Therefore, after carefully reviewing the record before us, we find that the trial court's award of $15,000 for Fuller's past loss of wages was based on the evidence before it and did not constitute an abuse of its discretion.

DOTD'S PAYMENT OF EXPERT WITNESS FEES
DOTD contends that it has paid twice for the expert witness fees and attaches to its brief a computer printout of the fees and payments as reported by the clerk's office.
It is well established in the jurisprudence that attachments to a brief are not evidence and cannot be considered by an appellate court. Norton v. Thorne, 446 So.2d 972 (La. App. 3 Cir.1984). Accordingly, we have no evidence before us which would permit us to review this issue and find that this issue is not properly before us.
For the foregoing reasons, the judgment of the trial court is affirmed in part, reversed in part and recast as follows:
IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that judgment be entered in favor of Linda Breaux Fuller Oswalt, as the executrix of the Estate of Jerald W. Fuller, and against the defendant, the State of Louisiana, Department of Transportation and Development, as follows:

 Past Loss of Wages $15,000.00
 General Damages 75,000.00
 Medical Expenses 31,105.18
 __________
 TOTAL $121,105.18

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that costs of the trial court are hereby assessed against defendant, the State of Louisiana, Department of Transportation and Development, as allowed by law, and that fees for the expert witnesses are hereby taxed as costs as follows:

 Glen Hebert $ 200.00
 Dr. Michael Kurth 200.00
 Allen Simmons 200.00
 Dr. Charles O. Bettinger, III 200.00
 Dr. William Foster 100.00
 Dr. Clark Gunderson 100.00
 Russell Paine 100.00
 Dr. Francis Bride 100.00
 _______
 TOTAL $1,200.00

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that plaintiff is entitled to judicial interest from the date of judicial demand.
Costs of appeal are assessed one-half to Linda Breaux Fuller Oswalt, as the executrix of the Estate of Jerald W. Fuller, and one-half to the State of Louisiana, Department of Transportation and Development.
*396 AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.
COOKS, J., dissenting with reasons and concurring in part.
COOKS, Judge, concurring in part and dissenting in part.
I concur with the majority opinion, except that portion reversing the trial court's assessment for future loss income and future pain and suffering. The members of the present panel seek to distinguish Barks v. Magnolia Marine Transport Co., 617 So.2d 192 (La.App. 3d Cir.1993), writ denied, 620 So.2d 876 (La.1993) by concluding our decision hinged on a factual recognition that "Magnolia Marine had sufficient knowledge of [Barks'] severely diminished physical condition prior to trial and `did not introduce any competent testimony at trial that would allow the trial judge to consider that he should not apply the normal life expectancy tables to this case.'" I believe the Majority's interpretation of Barks is too restrictive and overlooks the substance of that opinion. As astutely noted by the late Justice Albert Tate in Dark v. Brinkman, 136 So.2d 463 (1962): "To avoid the indefinite prolongation of litigation, it is necessary to assign some arbitrary date beyond which factual events affecting quantum should not be considered." As a general rule, Justice Tate points out, "the loss suffered by an injured person is determinable by the conditions existing as of the date of the tort, such being the time when the right and cause of action for tort-caused damages arose, so that unrelated subsequent events such as remarriage do not affect the amount of recovery." However, "the death of the injured person, at least prior to the trial, fixes and makes ascertainable the amount of damages for loss of earnings and pain, which are otherwise awarded on the basis of life expectancy." Payne v. Georgetown Lumber Co., 117 La. 983, 42 So. 475 (1906). Many courts still hold "as the better rule" that the injured person's diminished earning capacity ought to depend on his or her life expectancy at the time of injury. 25 C.J.S. § 81 p. 902. Louisiana has elected to advance the life expectancy tables beyond the date of injury. In Barks this court said: "In tort cases the award is based upon the evidence at the trial of all past, future, and prospective harms." We did not italicize the word "trial" for appearance. Though referring to the particular facts presented in Barks, our remarks were prefaced with emphasis that in tort cases the award for future damages should be based on the trial evidence. I do not agree, as suggested by the majority, that any real distinction exists in this case just because the injured party died after trial but before the signing of judgment and the defendants did not have knowledge of this occurrence until after trial. It seems more in keeping with the "better rule" to assign the close of trial as the cut-off date in such cases.
NOTES
[*] Judge William A. Culpepper, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[1] Although the myelogram of May 2, 1988, also showed a defect in the cervical spine, this injury was not developed as being causally related to the accident. Dr. Foster opined that since Fuller did not complain of cervical pain until several months after the accident, he probably had a degenerative disk syndrome in the cervical spine. Fuller does not make any claim for this condition.