635 So.2d 1171 (1994)
Charles E. WILSON, Sr.
v.
COMPASS DOCKSIDE, INC. and Compass Marine Services, Inc.
No. 93-CA-1860.
Court of Appeal of Louisiana, Fourth Circuit.
March 15, 1994.
Limited Rehearing Granted May 12, 1994.
*1172 Carl J. Barbier, Kelly E. Barbier, Law Offices of Carl J. Barbier, New Orleans, for plaintiff-appellee.
Paul N. Vance, Jeffry L. Sanford, Rice, Fowler, Kingsmill, Vance, Flint & Booth, New Orleans, for defendant-appellant.
Before KLEES, ARMSTRONG and PLOTKIN, JJ.
PLOTKIN, Judge.
This appeal arises from an action, brought by a deckhand against the vessel owner, under the Jones Act, 46 U.S.C.App. § 688 and general maritime law, for injuries sustained while he was working aboard a barge which was being towed by the boat on which he worked alleging unseaworthiness of the M/V Miss NARI and negligence on the part of the defendants. At the commencement of trial, it was stipulated that defendant Compass Dockside, Inc. (Compass) was plaintiff Charles E. Wilson Sr.'s (Wilson) employer at the time of the accident and Compass Marine Services, Inc. was dismissed from the case. After a non jury trial on the merits on April 22, 1992, the trial court awarded plaintiff $10,000.00 giving the following as reasons for judgment:
Plaintiff's extreme complaints were the reasons back surgery was performed. When the back was exposed, the neurosurgeon found only a mild degenerative bulge. *1173 This may or may not have been symptomatic.
The lay testimony is overwhelming that plaintiff's complaints to his doctors were unfounded. Some of such testimony is suspect by reason of family relationships gone sour. Other such testimony is not suspect. Taken as a whole, I am convinced the evidence compels the conclusion that plaintiff's complaints were fraudulent, and he accepted surgery to inflate this claim.
He sustained only a back sprain, and damages will be assessed in the sum of $10,000.00.
Plaintiff filed a motion for new trial which the court limited to the issue of quantum or damages. On December 7, 1992, the trial court amended the judgment increasing the award to $344,107.97 with interest from date of injury and costs and giving the following reasons for judgment:
Reasons for judgment on rehearing: I made a mistake in concluding the plaintiff did not require back surgery.
I am still convinced the plaintiff exaggerated his complaints to the doctor. His assertion of exquisite pain was inconsistent with the life he was leading. But in the original judgment I incorrectly ignored the objective evidence of injury, most notably the atrophy and spasm.
The award from this judgment was as follows:

outstanding medical bills $ 47,107.97
lost wages, benefits and diminished
earning capacity $150,000.00
general damages $125,000.00
 ___________
 $322,107.97

Defendants filed a motion for new trial which was denied. This appeal on the issue of quantum followed. Liability is not at issue.

FACTS
Plaintiff was employed by defendant Compass as a seaman and member of the crew of defendant's vessel, a tugboat, the M/V MISS NARI, in the capacity of a deckhand. On October 27, 1988, Wilson and a co-worker were readying a barge for a tow. Wilson was injured when a ratchet, being used by the co-worker to tighten the cables between the barges, came loose causing him to fall backwards and strike his back on the deck of the barge.

SCOPE OF REVIEW
The defendant avers that this court should consider both the original judgment and the judgment after the new trial when making a determination of the present case. However defendant does not argue that the trial court erred in granting a new trial. When a new trial is granted the original judgment is set aside. Lynch v. Lynch, 422 So.2d 703, 705, 706 (La.App. 3rd Cir.1982). The judgment from the new trial becomes the final judgment from which an appeal may be taken. The fact that the trial court granted a new trial for reargument only simply meant that no additional evidence could be adduced. La.C.C.P. art. 1978.
State courts have jurisdiction over Jones Act claims under the "saving to suitors" clause of 28 U.S.C. § 1333(1). Federal substantive admiralty or maritime law applies when the claim is one cognizable in admiralty. Lavergne v. Western Company of North America, Inc., 371 So.2d 807, 809 (La. 1979). In federal court a judgment for the plaintiff on a Jones Act claim must be affirmed unless there are no reasonable supporting facts. Barks v. Magnolia Marine Transport Co., 617 So.2d 192, 194 (La.App. 3rd Cir.1993), writ denied, 620 So.2d 876 (La.1993). "Evidence of even the slightest negligence on the part of the employer is sufficient to sustain a finding of Jones Act liability." Babineaux v. Lykes Bros. S.S. Co. Inc., 608 So.2d 659, 663 (La.App. 3rd Cir. 1992). However, a claim filed under general maritime law is governed by the lesser standard of review, the "clearly erroneous" standard, i.e. whether reasonable persons could have arrived at a contrary verdict. Griffin v. LeCompte, 471 So.2d 1382, 1387 (La.1985). When this circuit was faced with an action in which both a Jones Act claim and a general *1174 maritime claim are put forth, the court used a "hybrid" review of the case. Osorio v. Waterman S.S. Corp., 557 So.2d 999 (La.App. 4th Cir.1990), writ denied 561 So.2d 99 (La. 1990). In Osorio the Jones Act claim was reviewed under the stricter approach and the general maritime claim reviewed under the "clearly erroneous" standard. In the case at bar, although there was a single cause, the unsecured ratchet, creating a single harm both standards of review will be applied.

ASSIGNMENT OF ERROR # 1
Compass contends that the district court was clearly erroneous in finding that Wilson needed surgery. Plaintiff's accident occurred on October 27, 1988. Within several hours of the accident Wilson was taken off the M/V MISS NARI and sent to the emergency room of Jo Ellen Smith Medical Center in New Orleans. Wilson complained of pain in the left hip and lower back. X-rays were negative, but physical examination revealed bruises and contusions. The next day, October 28, 1988, Wilson visited the Bone and Joint Clinic and was seen by Dr. Charles Anastasio. Dr. Anastasio diagnosed plaintiff's condition as contusion and sprain of the lumbosacral region and prescribed outpatient physical therapy. Because plaintiff resided in the New Iberia area, he decided to follow up with Dr. Richard LeBlanc at the Iberia Orthopedic Group.
Dr. LeBlanc was deceased at the time of the trial, however, the records of his medical treatment of Wilson, from November 7, 1988 to February 22, 1989, were admitted into evidence. Dr. LeBlanc's initial examination revealed a splinting (muscle spasm) and limited motion in the lumbar spine area with acute tenderness over the lower lumbar spine and paraspinous muscles bilaterally. The straight leg test was positive on both the right and left sides but there were no significant difference in the measurements of the thighs. Dr. LeBlanc diagnosed plaintiff as suffering from a low lumbar strain and possibly a lumbar disc injury. He recommended further diagnostic testing, including an MRI. Further, he prescribed physical therapy, muscle relaxers and pain medication. A subsequent MRI revealed bulging discs at L4-5 and at L5-S1. Although Wilson continued the prescribed treatment he reported no significant decrease in pain. Dr. LeBlanc recommended a lumbar myelogram and a CT scan. On plaintiff's last visit with Dr. Le-Blanc, the doctor noted that there was still marked splinting in the back and a positive straight leg raising test revealed more pain on the right than the left. Plaintiff informed Dr. LeBlanc that he had consulted Dr. Blanda, an orthopedic surgeon for further treatment.
Dr. Blanda confirmed Dr. LeBlanc's findings. He reviewed the tests interpreting them to reveal degenerative disc changes as well as disc protrusion, particularly at L5-S1. The myelogram also showed that the L5-S1 nerve roots on the right did not fill out well, which meant that there was evidence of nerve compression on the right. Dr. Blanda explained that all of the tests are completely objective and that there is nothing the patient can do to control the findings or the results of the tests.
Dr. Blanda referred plaintiff to Dr. Robert Rivet, a neurosurgeon, for a second opinion as to the advisability of surgical treatment. Dr. Rivet agreed that Wilson was a candidate for surgical treatment, however he recommended that a discogram be performed prior to surgery in order to determine the particular level or levels which should be fused. The discogram was performed on August 29, 1989.
The discogram consists of the infusion of dye into the disc, and x-ray or fluoroscope is used to determine whether dye is leaking from the disc, and finally the examiner determines whether or not there is reproduction of the patient's clinical pain. A normal healthy disc accepts 1½ to 2 cc of dye. Dr Blanda injected more than 3 cc into plaintiff, indicating that the disc was abnormal. Using a fluoroscope, Dr. Blanda observed leakage of the dye, indicating a herniation or tear in the disc capsule. When the discs were injected, plaintiff's clinical pain was reproduced.
*1175 Dr. Blanda and Dr. Rivet performed a lumbar discectomy, nerve decompression and lumbar fusion in September 1989. Dr. Rivet testified that the disc material that was removed from plaintiff was abnormal and was compatible with the history of plaintiff having injured his back in the accident of October 1988. Dr. Blanda agreed and testified that the injuries were sustained when plaintiff fell backwards on the barge. Additionally he testified that thigh atrophy had developed subsequent to the accident.
Post-operatively, plaintiff did well for a time, then x-rays showed some absorption or dissolving of the bone graft. A CT scan revealed a recurrent disc or large amount of scar tissue at L4-5 as well as a non-union of the fusion. In November 1990, plaintiff underwent a second surgery to re-fuse his back. The doctor found a great deal of scar tissue surrounding the L-5 nerve root and some recurrent disc material. Since then plaintiff has made good progress with a reduction in pain. Dr. Blanda opined that plaintiff sustained a 25-30 percent permanent partial disability of the whole body.
Several witnesses testified that Wilson engaged in motorcycle riding, fast dancing, moving heavy furniture, picking up a heavy motorcycle, mowing the lawn and numerous activities inconsistent with the pain that he told his doctors he was experiencing. The trial judge did not find plaintiff to be a very credible witness and believed that Wilson exaggerated his pain. Nevertheless, the objective medical evidence confirms that Wilson did suffer a back injury which was causally connected to his backwards fall on the deck of the barge. The defendant points out that Dr. Sheperd, who Wilson consulted prior to Dr. Blanda, testified that he did not recommend surgery. Generally, the treating physician's testimony is given greater weight than a doctor who has seen a patient only for consultation purposes. O'Donovan v. Bankers Life and Casualty Co., 305 So.2d 643, 648 (La.App. 3rd Cir.1974). Whether the "clearly erroneous" standard or the more stricter standard of the Jones Act is applied, there is sufficient evidence to support the trial court's conclusion that Wilson needed surgery. Therefore, we cannot find that the trial court erred when it found that plaintiff needed surgery.

ASSIGNMENT OF ERROR # 2PRE-JUDGMENT INTEREST
Defendant contends that the court awarded plaintiff pre-judgment interest without apportioning liability under the Jones Act or general maritime law and absent such a finding, the court erred in awarding pre-judgment interest. Moreover, defendant asserts that there is no basis in the record for an award of pre-judgment interest because there is no basis in the record for a finding of unseaworthiness. Compass cites McPhillamy v. Brown & Root, Inc., 810 F.2d 529 (5th Cir.1987) and Osorio, supra, cases in which the jury failed to apportion liability between the Jones Act claim and the general maritime claim. The court ruled that pre-judgment interest would not be allowed where apportionment of liability could not be determined. However, both of these cases were tried by jury and therefore are inapplicable to the present case. It is well settled in Louisiana that when a claim is brought under the Jones Act and general maritime law and tried before a judge, the award of pre-judgment interest is within the discretion of the trial judge. Danos v. McDermott, Inc. 563 So.2d 968, 973 (La.App. 1st Cir.1990). Furthermore, the allowance of pre-judgment interest is within the discretion of the trial court when the action is tried to a judge under the court's admiralty jurisdiction. McFarland v. Justiss Oil Co., Inc., 526 So.2d 1206, 1215 (La.App. 3rd Cir.1988), See also, Osorio, supra at 1011. This issue is without merit.

ASSIGNMENT OF ERROR 3COMPARATIVE FAULT AND FAILURE TO MITIGATE
Defendant asserts that the district court erred in failing to reduce plaintiff's recovery by the amount of his comparative fault. *1176 Comparative fault is the equivalent of contributory negligence and is governed by La. C.C. art. 2323 which states:
If a person suffers injury, death or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the claim for damages shall not thereby be defeated, but the amount of damages recoverable shall be reduced in proportion to the degree or percentage of the negligence attributable to the person suffering the injury, death or loss.
There is no evidence in the record indicating that Wilson contributed to the cause of his injury. All testimony pointed to the negligence of a co-worker in not securing the ratchet to the cable properly. This argument is without merit.
In the alternative, Compass contends that Wilson had a duty to mitigate his damages, "Louisiana law requires that an injured person exercise the diligence and care of an man of ordinary prudence to minimize his damages: Jacobs v. New Orleans Public Service, Inc., 432 So.2d 843, 845 (La. 1983). "The burden rests with the wrongdoer to show that the victim of tortious conduct failed to mitigate damages. The tortfeasor must demonstrate (1) that the injured party's conduct after the accident was unreasonable and (2) that the unreasonable conduct had the consequence of aggravating the harm." Marathon Pipe Line Co. v. M/V Sea Level II, 806 F.2d 585, 592 (5th Cir.1987), reh'g denied, 811 F.2d 602 (5th Cir.1987), reh'g denied, 811 F.2d 602 (5th Cir.1987). Defendant presented evidence that Wilson's activities after his injury were unreasonable, thus satisfying the first prong of the test. However, defendant failed to present evidence that Wilson's activities aggravated his injury, This issue is without merit.

ASSIGNMENT OF ERROR # 4GENERAL DAMAGES
Compass asserts that the court erred by awarding Wilson $125,000 in general damages. The Louisiana Supreme Court has explained that the discretion vested in a trier of fact in awarding general damages is "great" and "vast". In Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La. 1993), the Court explained:
Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.
Unless there is a clear abuse of the "much discretion" of the trier of fact the judgment shall stand, We find no such abuse.
The judgment of the trial court is affirmed.
PER CURIAM.
We grant rehearing for the limited purpose of further addressing the arguments by the defendant/appellant that appellate courts should consider both the trial court's original opinion and the trial court's opinion on rehearing when reviewing a judgment resulting from a trial court decision to grant a motion for new trial.
As we stated in our original opinion, the granting of a motion for new trial sets aside and vacates the original judgment on the issue on which a new trial has been granted. Lamalle v. Winn-Dixie Louisiana, 452 So.2d 414 (La.App. 3d Cir.), writ denied 456 So.2d 1002 (La.1984), Ready v. Sun Oil Co., 315 So.2d 840 (La.App. 1st Cir.1975). Thus, when the trial court has granted a motion for new trial, the appellate court is prohibited from reviewing the case to determine whether the original judgment was correct. Mitchell v. Windham, 426 So.2d 759 (La.App. 3d Cir.1983). Thus, the only judgment this court is allowed to review is the second judgment, issued after the granting of the motion for new trial, which is in fact the judgment that we reviewed in this case.
Moreover, we did consider, in writing our opinion, the trial judge's finding in *1177 his first judgment that some of the plaintiff's complaints were "fraudulent," which he reiterated in his second judgment by noting that he was "still convinced the plaintiff exaggerated his complaints to the doctor" because "[h]is assertion of exquisite pain was inconsistent with the life he was leading." Our affirmation of the trial court's second judgment is based purely on the record evidence that the plaintiff did in fact suffer the damages awarded as a result of the accident sustained during the course and scope of the accident aboard the barge. We agree with the trial judge that the plaintiff did exaggerate his complaints to his doctors; however, the fact that he exaggerated his pain does not foreclose a finding that he did in fact suffer a back injury which required the surgery that he underwent. The trial judge found on the motion for new trial that the plaintiff's damages incurred as a result of the accident in question totalled $322,107.97. We affirmed because the record supported that award.